REVISED

United States Court of Appeals,

Fifth Circuit.

No. 96-41212.

UNITED STATES of America, Plaintiff-Appellee,

v.

Miguel Enrique REYNA, Defendant-Appellant.

Nov. 25, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before JOHN R. GIBSON[*], JOLLY and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Miguel Reyna appeals from the judgment of conviction and the sentence entered by the district court for his violation of 26 U.S.C. § 5861(d), the unlawful possession of a firearm which is not registered in the National Firearms Registration and Transfer Record. Before trial, Reyna entered a plea of guilty and the court then sentenced him to 46 months and a term of supervised release of three years. We affirm Reyna's conviction and sentence.

I

Except for the alleged "high-speed chase" between the police and Reyna, the facts are largely undisputed in this case. The Mission (Texas) Police Department responded to a call regarding the discharge of a weapon. As officers arrived on the scene, they

---

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

1

observed Reyna leaving his residence in an automobile with his minor child. When an officer stopped Reyna's vehicle shortly thereafter, he found a short barrel shotgun under the driver's seat that had a barrel length of approximately 121/2 inches and an overall length of approximately 191/2 inches. The police then arrested Reyna.

A federal grand jury indicted Reyna for knowingly possessing a sawed-off shotgun. Ultimately, Reyna pled guilty to the charge. During the plea colloquy, the court asked Reyna if he understood the nature of the charge and Reyna stated that he was accused of "possession of an unlawful firearm." Reyna further indicated that the unlawful firearm was a sawed-off shotgun. The court then rearraigned Reyna on the record and charged him with "knowingly possess[ing] a firearm, namely a weapon made from a shotgun with an overall length of less than 26 inches and a barrel of less than 18 inches ... not registered to him in the National Firearms Registration and Transfer Record" in violation of section 5861(d). Reyna stated that he understood the indictment and that he was pleading guilty because he was guilty. The court also asked Reyna if he understood that by pleading guilty, he was saying that he "knew that it is against the law to have this firearm without registering it with the National Firearms people." Reyna answered in the affirmative.

The district court thereafter ordered the Probation Officer to prepare a presentence investigation report ("PSR"). The PSR recommended a two-point sentence enhancement pursuant to U.S.S.G.

2

§ 3C1.2 because Reyna "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement officers." The facts supporting the two-point enhancement as alleged in the PSR were that Reyna "initiated a high speed chase for several miles" and in his "attempt to avoid or flee from arrest, he attempted to hit one of the patrol units as he was driving in the middle of the road and caused oncoming traffic to get off the roadway." At the sentencing hearing, Reyna's attorney objected to the two-point enhancement and disputed the facts as put forth by the PSR. Reyna's attorney proffered contrary facts to the court that there was no "high speed chase," that Reyna drove less than 9/10 of a mile from his home (not "several miles"), that he was not "fleeing" the police, that he stopped as soon as the police vehicle did a u-turn and activated its lights and siren, that his near-collision with the patrol car was accidental and caused by his failing brakes, and that no oncoming traffic was forced off the roadway.

The government rested on its factual contentions as set out in the PSR. The district court considered Reyna's proffer of facts, as well as the contrary evidence in the PSR, and then denied Reyna's objection to the two-point enhancement for reckless endangerment during flight. The court later adopted all of the justifications in the PSR as justification for the sentence. The district court sentenced Reyna to serve a term of imprisonment of 46 months to be followed by three years of supervised release. This timely appeal followed.

Reyna appeals his guilty plea on the ground that the district court violated Rule 11 and the Due Process Clause of the Fifth Amendment when the judge failed to inform Reyna in the plea colloquy that a violation of section 5861(d) required Reyna to know the characteristics of his weapon that brought it within the statutory definition of "firearm."[1]  Because the plea colloquy indicates that Reyna understood the illegal nature of his firearm and no additional information would have affected his willingness to plead guilty, we disagree.

A

Rule 11 provides that, "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... the nature of the charge to which the plea is offered."  FED.R.CRIM.P. 11(c)(1).  In *McCarthy,* the seminal Rule 11 case, the Supreme Court explained the purpose behind Rule 11:

> First, although the procedure in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary.  Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination.

*McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170,

---

[1]The characteristics that brought his sawed-off shotgun within the statute were a barrel length less than 18 inches (Reyna's was 121/2 inches) or an overall length less than 26 inches (Reyna's was 191/2 inches).  26 U.S.C. § 5845(a)(2).

22 L.Ed.2d 418 (1969) (footnotes omitted).

When an appellant claims that a district court failed to comply with Rule 11, we apply a two-question harmless error analysis: (1) Did the sentencing court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant.[2] *See United States v. Still,* 102 F.3d 118, 122 (5th Cir.1996), *cert denied,* --- U.S. ----, 118 S.Ct. 43, --- L.Ed.2d ---- (1997) (No. 96-1440); *United States v. Johnson,* 1 F.3d 296, 298 (5th Cir.1993) (en banc); *FED. R. CRIM. P.* 11(h). Thus, we must decide what procedures were required by Rule 11 in this case.

Reyna contends that the district court failed to inform him of the "nature of the charge" because he was not told that section 5861(d) requires that a defendant know the characteristics of his sawed-off shotgun that bring it within the statutory definition of firearm. *Cf. Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (holding that Congress did not intend to eliminate traditional mens rea element for violations of section 5861(d) when defendant possessed a machinegun). Whether or not section 5861(d) has such a mens rea element for sawed-off shotguns is a question of first impression in this Court.

---

[2]Although Reyna did not present his claim of noncompliance with Rule 11 in the district court, it is not waived. *United States v. Still,* 102 F.3d 118, 122 n. 9 (5th Cir.1996), *cert. denied,* --- U.S. ----, 118 S.Ct. 43, --- L.Ed.2d ---- (1997) (No. 96-1440). We can adjudicate the Rule 11 challenge on direct appeal without an initial presentation of the particular arguments to the district court. *See id.; United States v. Coronado,* 554 F.2d 166, 170 n. 5 (5th Cir.1977).

Section 5861(d) makes it unlawful:

> [T]o receive or possess a firearm which is not registered ... in the National Firearms Registration and Transfer Record.

29 U.S.C. § 5861(d). Congress did not, however, extend this provision to all "firearms" as that term is commonly understood, nor to all "sawed-off shotguns." 26 U.S.C. § 5845(a)-(f); *see also United States v. Barr,* 32 F.3d 1320, 1323 n. 4 (8th Cir.1994) ("Many weapons commonly thought of as firearms are not included in the definition of "firearm' under the Act."). Instead, the statutory definition of "firearm" is limited to specific types of weapons with specific characteristics, including:

> (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such a weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; ...

26 U.S.C. § 5845(a). Although section 5861(d) is silent concerning the mens rea required for a violation, the Supreme Court held in *Staples* that section 5861(d) requires proof that a defendant know the characteristics of his machinegun that make it a "firearm" under the statute. *Staples,* 511 U.S. at 604, 619, 114 S.Ct. at 1796, 1804.

We believe that the Supreme Court's decision in *Staples* constrains our decision on the relevant mens rea required for violations of section 5861(d).[3] Thus, we must confront directly

---

[3]While it appears the government does not disagree with the contention that *Staples* controls our decision in this case, it is not clear what specific mens rea is required by *Staples* for the case at hand. The government's brief concedes that "the Supreme Court has held that knowledge of the illegal nature of the firearm is an essential element of 26 U.S.C. § 5861(d)." [citing *Staples v.*

6

the question of whether the knowledge requirement implied by the Court in *Staples* is limited to the facts of that case, where the defendant possessed a semiautomatic rifle that had been converted into a machine gun, or whether section 5861(d) also requires that a defendant in possession of a sawed-off shotgun know the characteristics of the shotgun that bring it within the statute. *Cf. Staples,* 511 U.S. at 609, 114 S.Ct. at 1799 ("[T]he very question to be decided is whether the defendant must know of the particular characteristics that make his weapon a statutory firearm.").

Six of the seven circuits that have addressed this issue for sawed-off shotguns have held that section 5861(d) does require proof that a defendant know the characteristics of his sawed-off shotgun that bring it within the Act. *See United States v. Edwards,* 90 F.3d 199, 203-04 (7th Cir.1996); *United States v. Dewalt,* 92 F.3d 1209, 1212 (D.C.Cir.1996) (government conceding the issue); *United States v. Keen,* 104 F.3d 1111, 1117-18 (9th Cir.1996) (same); *United States v. Mains,* 33 F.3d 1222, 1229 (10th Cir.1994); *United States v. Starkes,* 32 F.3d 100, 101 (4th Cir.1994); *United States v. Owens,* 103 F.3d 953, 956 (11th Cir.) (holding same for rifle with barrel less than 16 inches), *cert. denied,* --- U.S. ----, 118 S.Ct. 44, --- L.Ed.2d ---- (1997)

One circuit has disagreed, holding that the government need only prove that the defendant possessed the sawed-off shotgun and

---

*United States* ].   The government, however, does not explain what they mean by "knowledge of the illegal nature of the firearm."

7

actually observed it. *United States v. Barr,* 32 F.3d 1320, 1324 (8th Cir.1994). In *Barr,* the Eighth Circuit rejected the argument that a defendant has to know the length of the sawed-off shotgun or its barrel and held that the "quasi-suspect" nature of the sawed-off shotgun and simple observation of the weapon was sufficient to support a conviction under section 5861(d). *Barr,* 32 F.3d at 1324. In holding that *Staples* did not apply to sawed-off shotguns, the court quoted the following passage from the Supreme Court's decision in *Staples:*

> Of course, we might surely classify certain categories of guns—no doubt including the machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation—as items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in *Freed.*

*Staples,* 511 U.S. at 611-12, 114 S.Ct. at 1800 (discussing *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (holding that possessor of hand grenade did not have to know that it was unregistered to violate section 5861(d))).

The quoted language does not support eliminating the *Staples'* mens rea requirement for sawed-off shotguns. The only question at issue in *Freed* was whether or not section 5861(d) had a mens rea requirement that the defendant must know that his hand grenade was unregistered. The Supreme Court held that because hand grenades are "quasi-suspect," a violation of section 5861(d) does not require that the defendant have knowledge that the firearm was unregistered. *Freed,* 401 U.S. at 609, 91 S.Ct. at 1118. Thus, if sawed-off shotguns are "quasi-suspect" weapons under *Freed,* it simply means that a defendant does not have to have knowledge that

8

the shotgun is unregistered; it says nothing about whether a defendant has to know that his shotgun has the characteristics that bring it within the statute.

In fact, the Court explicitly stated in *Staples* that "our determination [in *Freed* ] that a defendant need not know that his weapon is unregistered suggests no conclusion concerning whether § 5861(d) requires the defendant to know of the features that make his weapon a statutory "firearm'; different elements of the same offense can require different mental states." *Staples,* 511 U.S. at 609, 114 S.Ct. at 1799. The Court further explained that,

> [O]ur analysis in *Freed* ... rested entirely on the assumption that the defendant knew that he was dealing with hand grenades—that is that he knew he possessed a particularly dangerous type of weapon (one within the statutory definition of a "firearm").... The predicate for that analysis is eliminated when, as in this case, the very question to be decided is whether the defendant must know of the particular characteristics that make his weapon a statutory firearm.

*Staples,* 511 U.S. at 609, 114 S.Ct. at 1799. The Court did not attempt to limit its language or its rationale for requiring a mens rea element to "machineguns" and stated in very clear language that the question before the Court was whether a defendant had to "know of the particular characteristics that make *his weapon a statutory firearm.*" *Id.* (emphasis added). The Court's answer was a clear "Yes." *Id.* at 620, 114 S.Ct. at 1804-05.[4]

---

[4]In holding that the *Staples'* knowledge requirement applies to the characteristics of a sawed-off shotgun, the Seventh Circuit explained:

> We agree that a person who knows his shotgun is less than 18 inches long or that his gun fires automatically has no claim of innocent ownership, just as if he knew he possessed a hand grenade. Without proof of this

9

Like the Seventh Circuit, we refuse to interpret section 5861(d) to have different mens rea requirements for the same element (*i.e.,* possession of a firearm) depending on the type of firearm. The Supreme Court explicitly held that section 5861(d) has a "knowledge" requirement; we cannot circumvent this requirement by holding that some of the "firearms" listed in the definition section of the statute do not have the same requirement.[5] *See Edwards,* 90 F.3d at 204 (refusing "to interpret *Staples* in such a way as to reach the odd result that the elements of a § 5861(d) offense vary according to the type of firearm at issue"). Finally, the *Staples* Court found section 5861(d)'s "harsh penalty" of up to ten years' imprisonment to be a "significant consideration in determining whether the statute should be construed as dispensing with mens rea." *Staples,* 511 U.S. at 616, 114 S.Ct. at 1802. This "harsh penalty" applies equally to all of the weapons listed in the statute and provides additional support for our refusal to limit the holding in *Staples* to one sub-category

---

particular knowledge, however, the defendant may only be aware that he owns a firearm in the general sense, which is precisely what the *Staples* Court held insufficient for a conviction under § 5861(d).

    *Edwards,* 90 F.3d at 204.

    [5]There is no principled reason to suggest that Congress intended the eight categories of firearms listed in the definition section of the statute to have different mens rea elements. The eight categories of firearms include: (1) a shotgun with a barrel less than 18 inches, (2) a modified shotgun with barrel less than 18 inches or overall length less than 26 inches, (3) a rifle with a barrel less than 16 inches, (4) a modified rifle with barrel less than 16 inches or overall length less than 26 inches, (5) a machinegun, (6) a silencer, (7) a grenade, and (8) a destructive device. 26 U.S.C. § 5845.

of "firearms" in the statute.

Congress did not make all sawed-off shotguns subject to the regulation requirement in section 5861(d); whether this is good public policy is not our decision. *See Staples,* 511 U.S. at 622, 114 S.Ct. at 1805 (Ginsburg, J., concurring) ("The Nation's legislators chose to place under a registration requirement only a very limited class of firearms."). The Court explained in *Staples* that "our holding depends critically on our view that if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect." 511 U.S. at 620, 114 S.Ct. at 1804. We believe that this principle must apply equally to the different weapons listed in the definition section of the statute. Consequently, we refuse to eliminate the mens rea requirement of section 5861(d) for anyone caught possessing a sawed-off shotgun in violation of the statute.[6]

B

We now turn to the question of whether the district court complied with Rule 11 during its colloquy with Reyna. Neither Rule

---

[6]When a shotgun's length is immediately apparent and externally visible to anyone observing it, the government's ability to prove knowledge should not be an onerous task. *See Mains,* 33 F.3d at 1230 (holding that jury could reasonably infer that defendant knew his shotgun was less than 18 inches when he personally assisted in sawing off the shotgun). "Knowledge is a factual issue, however, which should be left for the jury to determine. The fact that the length may be obvious or apparent simply goes to the ease in which the government will be able to prove the requisite knowledge.... The fact that a shotgun's length is obvious and apparent is simply a means of proving knowledge, not a substitute for such proof." *Edwards,* 90 F.3d at 204-05.

11

11 nor the case law specifies the minimum that the district court must do to "inform the defendant ... of the nature of the charge." FED.R.CRIM.P. 11(c); *see also United States v. Dayton,* 604 F.2d 931, 937-38 (5th Cir.1979) (en banc) (explaining that there is no simple or mechanical rule). Instead, it has been aptly stated that the court must have a colloquy with the defendant that would lead a reasonable person to believe that the defendant understood the nature of the charge. *See United States v. Dewalt,* 92 F.3d 1209, 1212 (D.C.Cir.1996); *United States v. Frye,* 738 F.2d 196, 199-201 (7th Cir.1984). In making this determination, we conduct our review, "solely on the basis of the record on appeal—principally the transcript of the plea colloquy hearing but also other portions of the record, such as any written plea agreement, the transcript of the sentencing hearing, and the sentence actually imposed." *United States v. Johnson,* 1 F.3d 296, 298 (5th Cir.1993) (en banc).

Although the district court's failure to inform Reyna of the *Staples'* mens rea requirement—specifically that Reyna must have known that the overall length of his sawed-off shotgun was less than 26 inches or that the barrel was less than 18 inches—may have violated Rule 11, we need not decide the issue because the specific facts of the plea colloquy and the record demonstrate that the possible deviation from Rule 11 was harmless error in this case. To determine whether a Rule 11 error is harmless (*i.e.,* whether it affects substantial rights), "we focus on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty."

12

*Johnson,* 1 F.3d at 298.

At the rearraignment, the prosecutor read the charge in the indictment on the record as follows:

> [T]he defendant, Miguel Enrique Reyna, knowingly possessed a firearm, namely a weapon made from a shotgun with an overall length of less than 26 inches and a barrel of less than 18 inches in length, to wit:  a CBC, single shot, .20 gauge shotgun ... with an overall length of approximately 19 one-half inches and a barrel of approximately 12 one-half inches in length, not registered to him in the National Firearms Registration Transfer Record.

The indictment specifically stated that Reyna had to "knowingly possess[ ]" "a weapon made from a shotgun with an overall length of less than 26 inches and a barrel of less than 18 inches in length." The judge made a particular point to ask Reyna if he understood the indictment;  Reyna indicated that he did.  A fair reading of the indictment would have told Reyna that the government had to prove that Reyna:  (1) possessed a weapon made from a shotgun with an overall length less than 26 inches and a barrel of less than 18 inches, and (2) knew he possessed a weapon made from a shotgun with an overall length less than 26 inches and a barrel of less than 18 inches.  *See Staples,* 511 U.S. at 623, 114 S.Ct. at 1806 (Ginsburg, J., concurring) (" "Knowingly possessed' logically means "possessed and knew that he possessed.' ");  *see also United States v. Mains,* 33 F.3d 1222, 1229-30 (10th Cir.1994) (same).

Reyna argues that his rearraignment is almost "identical" to one in another sawed-off shotgun case where the D.C. Circuit held the colloquy to violate Rule 11.  *See Dewalt,* 92 F.3d at 1212-14 (finding that defendant had no reason to know that knowledge of characteristics of shotgun was element of the crime).  Reyna,

13

however, is mistaken. First, unlike the indictment at issue here, the indictment in *Dewalt* did not mention that the statute only covers sawed-off shotguns with an overall length less than 26 inches or barrel less than 18 inches. *See id.; see also Mains,* 33 F.3d at 1229-30 (finding that jury instruction which stated: "knowingly possessed a shotgun with *a barrel length of less than 18 inches or an overall length less than 26 inches*" meant knowledge of the overall length or barrel of the shotgun) (emphasis added). Instead, the indictment in *Dewalt* simply stated that the defendant must "knowingly receive[ ] and possess[ ] a firearm" and then it listed the "descriptive details" of the defendant's shotgun.[7] Second, the indictment in *Dewalt* was never read to the defendant during the colloquy, nor did the judge ask the defendant whether he had even read the indictment. Finally, the judge in *Dewalt* did not even mention that the charge to which the defendant was pleading concerned possession of a weapon, much less possession of a sawed-off shotgun with a barrel less than 18 inches long. *See Dewalt,* 92 F.3d at 1212 ("The district judge appears to have approached his solemn task with a somewhat casual attitude.").

In contrast, the district court here asked Reyna many

---

[7]Specifically, the indictment stated that Dewalt "knowingly received and possessed a firearm, that is, J.C. Higgins sawed-off shotgun, with an overall length of 291/4 inches and a barrel length of 161/2 inches, which had not been registered to him." *Dewalt,* 92 F.3d at 1214. The D.C. Circuit explained that "the indictment appears first to describe the crime and then to describe the evidence.... After all, that J.C. Higgins manufactured the shotgun and that the overall length was 291/4 inches are merely descriptive details—they do not bring the weapon within the statutory definition of a "firearm,' and are therefore irrelevant to the sufficiency of the charge." *Id.*

14

questions concerning the nature of his offense. When asked whether he understood the charge of which he was being accused, Reyna told the judge that he was accused of "possession of an unlawful firearm" and then specified that it was a "sawed-off shotgun." The district court also asked Reyna if he understood that by pleading guilty, he was saying that he "knew that it is against the law to have this firearm without registering it with the National Firearms people." (emphasis added). Reyna replied that he did.[8] Reyna's answer to this question supports our opinion that no additional information "would have been likely to affect [his] willingness to plead guilty."[9] *Johnson,* 1 F.3d at 298.

We believe that the record in this case demonstrates that the district court's failure to specifically ask Reyna if he knew that his 121/2 inch barrel was less than 18 inches or that his 191/2

---

[8]Although Reyna's answer to this question supports his guilty plea, the question posed by the district court was not a correct statement of the mens rea required for a violation of section 5861(d). In order to plead guilty, Reyna did not have to know it was against the law to possess the weapon or even that there was a registration requirement; instead, he needed only to possess the weapon and know it was less than 26 inches or that its barrel less than 18 inches. Moreover, the government does not have to show knowledge of the law in order to obtain a conviction under section 5861(d). *See Staples,* 511 U.S. at 622 n. 3, 114 S.Ct. at 1805 n. 3 (Ginsburg, J., concurring) (quoting *Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1990) ("The mens rea presumption requires knowledge only of the facts that make the defendant's conduct illegal, lest it conflict with the related presumption, "deeply rooted in the American legal system,' that, ordinarily, "ignorance of the law or a mistake of law is no defense to criminal prosecution.' ")).

[9]Reyna does not claim anywhere in his brief that he did not actually know the physical characteristics of his weapon. Instead, Reyna focuses on the failure of the court to explain the *Staples'* knowledge requirement as the violation of Rule 11.

inch shotgun was less than 26 inches could not "reasonably be viewed as having been a material factor affecting [Reyna's] decision to plead guilty." *United States v. Bachynsky,* 934 F.2d 1349, 1360 (5th Cir.1991) (en banc).

Consequently, because we find that Reyna's replies to the court's inquiries along with the indictment attest to Reyna's understanding of the charge against him, the possible deviation from Rule 11 is harmless error. Accordingly, we reject Reyna's Rule 11 claim.

C

Reyna also claims that the district court violated the Due Process Clause of the Fifth Amendment because his guilty plea was involuntary as a result of his not being informed of the mens rea element implied by *Staples.* We disagree. The voluntariness of a guilty plea is a question of law that we review *de novo.*[10] *United States v. Amaya,* 111 F.3d 386, 388 (5th Cir.1997); *United States v. Howard,* 991 F.2d 195, 199 (5th Cir.1993).

A guilty plea cannot be voluntary "unless the defendant received "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due

_____

[10]The government argues that Reyna's failure to raise the claim in the district court that his guilty plea was involuntary constitutes a forfeiture of that claim. We disagree. Because we look to the record and the Rule 11 colloquy to adjudicate the voluntariness claim, we can do so on direct appeal without an initial presentation to the district court. *See Davis v. Butler,* 825 F.2d 892, 893-94 (5th Cir.1987); *Bonvillain v. Blackburn,* 780 F.2d 1248, 1249-51 (5th Cir.1986); *cf. Still,* 102 F.3d at 122 n. 9 (holding that Rule 11 claim is not waived even when not presented to the district court).

16

process.' " *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257-58, 49 L.Ed.2d 108 (1976) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)). This court has consistently held, however, that "a guilty plea would be upheld as voluntary even if the trial judge failed to explain the offense if the record showed that the defendant understood the charge and its consequences." *Bonvillain v. Blackburn,* 780 F.2d 1248, 1250 (5th Cir.1986); *see also Davis v. Butler,* 825 F.2d 892, 893 (5th Cir.1987); *Hobbs v. Blackburn,* 752 F.2d 1079, 1081 (5th Cir.1985).

Looking at the Rule 11 colloquy, the indictment, and the record in this case (in light of our harmless error discussion), we are convinced that Reyna understood the charge against him.

### III

Reyna also appeals his sentence on the ground that the district court erred in giving him a two-point sentencing enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during flight. We disagree. We review the district court's factual findings for clear error, while we review the court's application of the Sentencing Guidelines *de novo. United States v. Peterson,* 101 F.3d 375, 384 (5th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 1346, 137 L.Ed.2d 504 (1997).

In the case at hand, the facts in the PSR that supported a two-point enhancement for reckless endangerment during flight were that Reyna "initiated a high speed chase for several miles" and in his "attempt to avoid or flee from arrest, he attempted to hit one of the patrol units as he was driving in the middle of the road and

17

caused oncoming traffic to get off the roadway." At the sentencing hearing, Reyna's attorney objected to the two-point enhancement and asked that the contrary facts set out in Reyna's written objection to the PSR be accepted as a proffer. While the court accepted the proffer of facts as evidence, Reyna's attorney did not ask for an evidentiary hearing nor the opportunity to put Reyna on the stand. The court then specifically denied Reyna's objection to the two-point enhancement. At the end of the sentencing hearing, the district court "adopt[ed] all justifications which are included in [the PSR]" as justifications for Reyna's sentence.

Reyna now claims that the government failed to meet its burden of proof on the factual allegations surrounding his flight and reckless endangerment.[11] We have clearly acknowledged, however, that the district court may consider the PSR in making factual determinations. *See United States v. Fitzgerald,* 89 F.3d 218, 223 (5th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 446, 136 L.Ed.2d 342 (1996). Here, the district court considered the facts set out in the PSR as well as the contrary facts proffered by Reyna, and found that the PSR was more reliable. *See id.* (holding that presentence report generally bears enough indicia of reliability to be considered as evidence). Although it is true that "[w]hen a

___

[11]Reyna correctly asserts that the ultimate burden of persuasion rested on the government once he produced specific rebuttal evidence that tended to show that the information in the PSR was untrue. *See United States v. Hooten,* 942 F.2d 878, 881-82 (5th Cir.1991); *United States v. Aguilera-Zapata,* 901 F.2d 1209, 1215 (5th Cir.1990); *United States v. Logan,* 54 F.3d 452, 455 (8th Cir.1995); *United States v. Rivera,* 6 F.3d 431, 444 (7th Cir.1993).

18

defendant objects to particular findings in the presentence report, the sentencing court must resolve the specifically disputed issues of fact if it intends to use those facts as a basis for its sentence," *see United States v. Smith,* 13 F.3d 860, 867 (5th Cir.1994), here the district court did so. The district court's factual finding that Reyna recklessly endangered life during his flight was not clearly erroneous.

IV

In summary, we AFFIRM Reyna's conviction for violating 26 U.S.C. § 5861(d), and AFFIRM his sentence.

19