# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 10, 2013

Lyle W. Cayce
Clerk

No. 12-41219

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

GERMAN RIOS GOMEZ, also known as Sealed 19,

Defendant–Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:10-CR-70-19

Before BARKSDALE, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:[*]

German Rios Gomez[1] ("Gomez") pleaded guilty to a single drug charge. He appeals various aspects of his sentence. We remand to allow the district court to correct its written judgment to reflect the charge to which Gomez pleaded guilty. As to Gomez's other challenges to his sentence, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] During his rearraignment, Gomez advised the district court that his name was Gomez Rios. However, he is referred to as Rios Gomez in pleadings and in the presentence report (PSR). In his brief, he is referred to as Rio-Gomez. The government submitted a Verification of Defendant's Name before the district court. The Verification noted he had been referred to previously as Gomez-Rios, but that Rios Gomez was the verified name.

No. 12-41219

## I. FACTUAL AND PROCEDURAL BACKGROUND

In a superseding indictment, Gomez was charged, along with other coconspirators, with participating in a conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, 50 grams or more of actual and methamphetamine ice, and five kilograms or more of cocaine. In that indictment, the Government gave notice of its intent to seek criminal forfeiture of a sum of money from all defendants jointly and severally equal to $10,296,000, representing the amount of proceeds obtained as a result of the offense alleged in Count I. In a subsequent pleading, the Government advised Gomez that he was charged in Count I of the superseding indictment, but stated that the essential elements of the offense required proof of a conspiracy involving only 50 grams or more of methamphetamine ice. The Government, Gomez, and his counsel signed and filed in the record a Factual Basis and Stipulation wherein Gomez agreed that the admissions made therein could be used to support his guilty plea to conspiracy to possess with intent to distribute 50 grams or more of methamphetamine ice. The stipulation reflected that if the case had gone to trial the Government would have proved the following facts: On or about August 2008, agents began investigating a drug-trafficking organization in Houston, Texas, that was distributing large quantities of methamphetamine ice and cocaine in Houston and Beaumont, Texas. In June 2009, agents began intercepting the phone conversations of Rogelio Pineda ("Pineda") to determine who the members of the organization and their supplier were and the amount of drugs being distributed. The telephone intercepts continued until February 2010, when Pineda was incarcerated. In December 2009, the agents began intercepting the phone calls of Jesus Pineda-Espinoza, who was the main supplier of the drugs to Pineda and his successors, and the interceptions continued until June 2010. During that time, undercover agents participated in undercover purchases of methamphetamine ice from various members of the

No. 12-41219

conspiracy and conducted many hours of surveillance. Their investigation revealed that there were at least 40 persons involved in the organization and that no less than 113 pounds of methamphetamine ice and 31 kilos or more of cocaine were possessed with the intent to distribute. Gomez further stipulated that he was a coconspirator who had agreed to distribute quantities of methamphetamine ice and/or cocaine and that he was personally responsible for the possession with intent to distribute and/or the distribution of more than 50 grams of methamphetamine ice while being involved in the conspiracy from approximately December 2009 until January 2010.

At the conclusion of the rearraignment hearing, the Government advised the district court that it had filed a motion and a preliminary order for forfeiture and requested that the district court sign the order. The Government's motion reflected that Gomez had been convicted of Count I of the superseding indictment and erroneously stated that he had entered into a plea agreement[2] on January 27, 2011, in which he agreed that the amount of $10,296,000 represented the amount of the proceeds obtained as a result of the offense for which he had been convicted. The motion further stated that the Government had not identified the specific assets that were derived from Gomez's offense of conviction or any property of Gomez's that could be forfeited, but that a money judgment against Gomez in the amount of $10,296,000 was sought based on the plea agreement and the amount of money determined to be derived from the offense. A signed preliminary order of forfeiture was filed in the record several days before the sentencing hearing. The order stated that Gomez had entered into a plea agreement in which he stipulated that $10,296,000 represented the amount of proceeds obtained from the offense alleged in Count I of the superseding indictment. The order further ordered the forfeiture of that sum by

---

[2] The minutes of the rearraignment reflected that there was no plea agreement in Gomez's case. He entered a guilty plea without a signed plea agreement.

3

Gomez and that the forfeiture would become final at the sentencing and made part of the sentence. Prior to agreeing to sign the preliminary judgment of forfeiture, the district court asked defense counsel if there was any objection, and counsel stated that Gomez had no objection to the preliminary judgment.

During the sentencing hearing, an investigating agent testified that during a two-week period, he heard Gomez in wire-tapped conversations referring to at least 18 pounds of methamphetamine ice. Although the agent acknowledged that he first intercepted a call to which Gomez was a party on December 29, 2009, he testified that the taped conversations led him to believe that Gomez was a well-established participant in the criminal activity and not a newcomer to the business. The agent related that Gomez's activity ended on January 10, 2010, when he was arrested. The agent reported that the conspiracy involved the distribution of 300 pounds of methamphetamine per year.

After hearing the testimony and the summaries of the intercepted calls, the district court determined that there "was not much evidence" that Gomez was involved in the conspiracy before December 2009, and that it would be difficult to find that he was directly involved before then or that the past activity was reasonably foreseeable. The district court determined that the preponderance of the evidence showed that Gomez should be held accountable for sixteen pounds or 7.26 kilograms of methamphetamine ice.

At the conclusion of the sentencing hearing, the Government asked the district court to sign the final forfeiture order, and defense counsel again stated that he had no objection. The district court granted the motion, which provided for a personal money judgment against Gomez, finding him jointly and severally liable with all co-defendants in this case in the amount of $10,296,000. The written judgment listed as Additional Forfeiture Property a money judgment in the amount of $10,296,000.

No. 12-41219

Contrary to the plea entered at the rearraignment hearing, which reflected that he was pleading guilty to conspiracy to possess with the intent to distribute 50 grams or more of methamphetamine ice, the written judgment stated that Gomez had pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine, 50 grams or more of methamphetamine ice, and five grams or more of cocaine.

## II. JURISDICTION

Pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this is an appeal from a final judgment of conviction and sentence entered into by the United States District Court for the Eastern District of Texas. Gomez filed a timely notice of appeal.

## III. DISCUSSION

Gomez purports to raise four issues on appeal, but actually raises five. We address each in turn.

### A. Federal Rule of Criminal Procedure 11 Violation

While not specifically listing it as a separate issue, Gomez argues that the district court failed to comply with Federal Rule of Criminal Procedure 11(b)(1)(J) because it made no attempt to advise him of the possible forfeiture during his rearraignment or to ensure that he was aware that it might be part of his sentence. Any variance from the requirements of Rule 11 is harmless if it does not affect the defendant's substantial rights. Fed. R. Crim. P. 11(h); *United States v. Reyna*, 130 F.3d 104, 107 (5th Cir. 1997); *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993) (en banc) ("[I]f a mistake is made by the district court during the Rule 11 colloquy, it shall be reviewed for harmless error."). This court, when faced with an appellant claiming the district court failed to comply with Rule 11, applies a two-question harmless error test. *Reyna*, 130 F.3d at 107. First, did the sentencing court vary from the procedures

No. 12-41219

required by Rule 11. *Id.* If so, did the variance affect the substantial rights of the defendant. *Id*.

Here, it is clear that Gomez satisfies the first prong of the test. Federal Rule 11(b)(1)(J) provides that the district court must inform the defendant about the potential forfeiture judgment and must determine that he understands that he may be subject to the forfeiture of his property. Gomez is correct that the district court did not address this topic during the rearraignment proceeding and that it was only briefly referenced when the Government sought to have its motion for a preliminary forfeiture order signed.

As to the second prong, although the district court varied from the requirements of the rule, Gomez cannot show that the variance affected his substantial rights because he cannot show that there is a reasonable possibility that, but for the error, he would not have pleaded guilty. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *Johnson*, 1 F.3d at 302 ("To determine whether a Rule 11 error is harmless (i.e., whether the error affects substantial rights), we . . . [evaluate whether] the district court's flawed compliance with . . . Rule 11 . . . may reasonably be viewed as having been a material factor affecting [defendant]'s decision to plead guilty." (some alteration in original) (citations and internal quotation marks omitted)).

The record reflects that the notice of intent to seek a criminal forfeiture in the form of a money judgment in the amount of $10,296,000 was contained in the superseding indictment and that Gomez acknowledged reading and discussing the indictment with his counsel. It further shows that when the Government sought to have the preliminary judgment of forfeiture signed at the conclusion of the rearraignment hearing, Gomez's counsel affirmatively stated that there was no objection to the judgment despite some inaccuracies in the motion regarding the existence of a plea agreement. Gomez was aware of the fact that he could be subject to a $10,296,000 forfeiture judgment as well as a possible

6

maximum fine of $4,000,000 but chose to enter the guilty plea. He cannot show that his rights were substantially affected by the district court's Rule 11 omission and, thus, he has not shown reversible error with respect to that claim. *See Dominguez Benitez*, 542 U.S. at 83; *United States v. Hernandez*, 470 F. App'x 333, 334–35 (5th Cir. 2012) (unpublished) (per curiam) (holding that failure to comply with Rule 11(b)(1)(J) was not plain error because the defendant was aware of the possible forfeiture prior to the entry of the guilty plea).

## B. Oral Pronouncement at Sentencing

Gomez contends that the district court erred in including the order of forfeiture in the final judgment because it was not orally pronounced at sentencing. While conceding that the Government asked the district court to enter the preliminary order of forfeiture at the conclusion of the hearing, he points out that the motion for forfeiture referred to a plea agreement although he had no such agreement with the Government. He also complains that there was no mention of the forfeiture in the PSR or at sentencing. Gomez argues that review should be under the abuse of discretion standard because the district court made no mention of forfeiture at sentencing, and he had no opportunity to object.

Gomez contends that the Government had to prove the connection between the amount of the proceeds and his specific criminal act by a preponderance of the evidence. He asserts that, if the district court had pronounced the judgment of forfeiture orally at sentencing, he would have established that the amount forfeited should have been based on sixteen pounds of methamphetamine ice having a value of no more than $448,000. Thus, he states that even if plain error review is applicable, he can show that the error resulted in substantial harm.

The Government argues that review is for plain error because Gomez did not challenge the forfeiture order after receiving ample notice of the amount that the Government would seek and that Gomez agreed to the factual stipulation

No. 12-41219

supporting the forfeiture in that amount.  It contends that contrary to Gomez's argument, the district court included the forfeiture order at the sentencing hearing, and, thus, the district court did not commit an error under Federal Rule of Criminal Procedure 32.2.

Gomez did not object to the district court's failure to make an oral pronouncement of the forfeiture order at sentencing.  Gomez's contention that the forfeiture should be reviewed for abuse of discretion because the district court did not mention the forfeiture during sentencing is without merit because the district court specifically asked defense counsel if he had any objection to the proposed forfeiture judgment.  Therefore, review is for plain error.  *See United States v. Marquez*, 685 F.3d 501, 510 (5th Cir. 2012).

The Comprehensive Forfeiture Act ("CFA"), 21 U.S.C. § 853, provides that a defendant convicted of the crimes such as those at issue here shall forfeit "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation."  21 U.S.C. § 853(a)(1).  Rule 32.2 of the Federal Rules of Criminal Procedure governs the procedure of a criminal forfeiture proceeding.  *See Marquez*, 685 F.3d at 509.  The indictment or information must contain notice to the defendant that the government will seek forfeiture of property.  *Id*.  Notably, the notice need not specify the amount of forfeiture the government seeks.  *Id*.; *see also* Fed. R. Crim. P. 32.2(a).

When the Government seeks a personal money judgment, the court "must determine the amount of money that the defendant will be ordered to pay."  Fed. R. Crim. P. 32.2(b)(1)(A).  "Unless doing so is impractical, the court must enter the preliminary order [of forfeiture] sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final."  *Id*. 32.2(b)(2)(B).  "The court must include the forfeiture when orally announcing the sentence *or must otherwise ensure that the defendant knows of the forfeiture*

*at sentencing.*" *Id*. 32.2(b)(4)(B) (emphasis added). The forfeiture order must be included in the judgment. *Id.*

As required by this rule, the record reflects that the district court ensured that Gomez had knowledge of the forfeiture at sentencing. As previously discussed, the superseding indictment, which the district court ascertained that Gomez had reviewed, contained written notice of the possible forfeiture judgment. Gomez also received oral notice of the preliminary forfeiture judgment and an opportunity to object to it and any factual inaccuracies therein at the conclusion of his rearraignment hearing. Gomez did not file any opposition to the proposed judgment during the six months preceding his sentencing. The record further shows that the Government filed the Final Order of Forfeiture on June 17, 2011, and that sentencing was held on June 20, 2011. The district court gave counsel an opportunity at sentencing to file an objection, and counsel declined to do so. Thus, the record reflects that Gomez was aware of the Government's intent to seek the personal money judgment of $10,296,000 against him and that he expressly declined to challenge it on two occasions. Gomez's failure to show that the forfeiture judgment was erroneous cannot be attributed to the district court's failure to make an oral pronouncement of the forfeiture judgment at sentencing. Thus, he did not demonstrate clear or obvious error that affected his substantial rights. *See Marquez*, 685 F.3d at 510.

## C. Sufficiency of the Evidence to Support the Forfeiture Judgment

Gomez further argues that the evidence was insufficient to support a forfeiture judgment in the amount of $10,296,000 because the record did not reflect a factual basis for that amount. He points out that the Bill of Particulars filed by the Government did not show how the amount of $10,296,000 was determined, and he contends that the amount is clearly incorrect because he pleaded guilty to possession with intent to distribute only 50 grams or more of methamphetamine ice. Relying on Rule 32.2(b)(2)(C), he argues that, if the

money is derived from a drug-trafficking offense and the actual property has not been found or is unavailable, the district court must determine the amount to be forfeited, and there is no indication in the record that the district court made this determination.

Gomez further argues that because this is a conspiracy case, the forfeiture amount is limited to the amount of criminal conduct by his coconspirators that was foreseeable to him, although he cites no Fifth Circuit case law for this proposition. He notes that the district court determined that he should only be held accountable for the transactions that took place during the time period of his participation in the conspiracy, December 2009 to January 2010, and that he should be held responsible for only sixteen pounds of methamphetamine ice, having a total value of $448,000.

The Government argues that because Gomez agreed to the factual basis and stipulation that set forth facts[3] supporting the $10,296,000 forfeiture, the district court could rely on the evidence in the record as relevant and reliable to support the forfeiture judgment. The Government further asserts that there was testimony at sentencing that revealed that the scope of the conspiracy was wider than originally thought and that it involved the distribution of 300 kilograms of methamphetamine ice per year.

In his reply brief, Gomez argues that the factual basis was internally inconsistent and was not based on reliable facts. He points out that it referred to a non-existent plea agreement, which held Gomez accountable for proceeds derived from activities that occurred before he began participating in the

---

[3] The stipulated facts encompass a much larger range of offenses than the one to which Gomez pleaded guilty. For example, the parties stipulated that had the matter proceeded to trial, the government would have proven, beyond a reasonable doubt, the following stipulated facts: at least 40 persons were involved in the conspiracy, at least 113 pounds of methamphetamine ice and 31 kilos of cocaine were possessed with the intent to distribute, and that Gomez was a coconspirator. Gomez signed a document acknowledging the above.

conspiracy and involvement with cocaine, a drug that he did not plead guilty to possessing with intent to distribute.

Rule 32.2 allows the factfinder's determination to be based on evidence already in the record and on any additional evidence submitted by the parties. Fed. R. Crim. P. 32.2(b)(1)(B).  The Government must establish the requisite nexus between the property and the offense by a preponderance of the evidence. Fed. R. Crim. P. 32.2(b)(1); *United States v. Gasanova*, 332 F.3d 297, 300–01 (5th Cir. 2003).  Gomez did not object in the district court to a lack of evidence to support the forfeiture judgment.  Thus, review is for plain error.  *See Marquez*, 685 F.3d at 510.

Gomez has not provided any persuasive authority showing that his forfeiture exposure should have been limited to $448,000, the value of the sixteen pounds of methamphetamine ice that was attributed to him personally. *See Hernandez*, 470 F. App'x at 335 (finding that defendant had not cited any authority showing that forfeiture amount is limited to personal involvement in the conspiracy and, thus, did not show plain error in determination of forfeiture amount).  It is not clear that this court has adopted the foreseeability concept in the context of a drug conspiracy forfeiture case or how it will be applied.  *See United States v. Olguin,* 643 F.3d 384, 398 (5th Cir. 2011) (conducting de novo review of the application of § 853 but finding it unnecessary to reach the issue of whether the foreseeability doctrine placed any limitations on forfeiture liability).  However, we need not reach the issue here in light of Gomez's failure to object to the Government's motion and proposed judgment indicating that he had agreed to liability for $10,296,000.

Evidentiary stipulations or admissions are binding on the parties and withdraw a fact issue from contention. *See United States v. Banks*, 624 F.3d 261, 264 (5th Cir. 2010); *Martinez v. Bally's La., Inc.,* 244 F.3d 474, 476 (5th Cir. 2001).  In light of his concessions, we hold that Gomez has not met his burden

No. 12-41219

under plain error review of showing that the district court committed clear or obvious error in holding him accountable for the forfeiture amount contained in the unopposed judgment. *See Hernandez*, 470 F. App'x at 335.

## D. Excessive Fines Clause

Gomez argues, for the first time on appeal, that the forfeiture judgment violates the Excessive Fines Clause of the Constitution because it is grossly disproportionate to the gravity of the offense in violation of the Eighth Amendment. He points out that the maximum statutory fine under 21 U.S.C. § 841(b)(1)(A) and the maximum fine under the Guidelines was $4,000,000. Because the maximum fine is less than the forfeiture amount in his case, he argues that the forfeiture judgment violates the Excessive Fines Clause.

Because Gomez raises his Eighth Amendment argument for the first time on appeal, we review his forfeiture judgment only for plain error. *See United States v. Helm*, 502 F.3d 366, 367 (5th Cir. 2007). To prevail under plain error review, Gomez would need to prove the district court erred, that the error was clear or obvious (rather than subject to reasonable dispute), that the error affected his substantial rights, and that the court should exercise its discretion to correct the error because it seriously affects the fairness, integrity or public reputation of judicial proceedings. *See Pucket v. United States*, 556 U.S. 129, 135 (2009); *United States v. Reyes*, 300 F.3d 555, 558 (5th Cir. 2002). Because Gomez cannot establish that the district court plainly erred, we affirm the court's forfeiture order.

The Government argues that no plain error occurred because this court has held that the Excessive Fines Clause does not apply to the proceeds of drug trafficking. The Government contends that 21 U.S.C. § 853(a) sets out property that is subject to forfeiture and distinguishes forfeitures from fines by allowing the imposition of a fine in addition to the mandatory forfeiture provided for in the statute. As the government points out, in *United States v. Betancourt,* 422

12

F.3d 240 (5th Cir. 2005), the court emphasized that a forfeiture award is different from a fine and held that the excessive fines provision of the Eighth Amendment did not apply to the forfeiture of property acquired with drug proceeds. *Id.* at 250. "All proceeds obtained from unlawful conduct and property traceable to those proceeds are subject to criminal forfeiture." *Id.* Gomez replies that the Government's reliance on *United States v. Betancourt,* 422 F.3d 240 (5th Cir. 2005), is misplaced because it conflicts with prior decided law and thus is not binding precedent.   Even if we adopted Gomez's position that *Betancourt* conflicts with earlier case law, the confusion in the law means that any error by the district court could not have been clear or obvious. *See Puckett*, 556 U.S. 135 (noting that to be correctable the error must not be subject to reasonable debate); *see also United States v. Mudekunye*, 646 F.3d 281, 295–96 (5th Cir. 2011) (stating that if an error is debatable it is not plain).  Here, at best, the law is unsettled, foreclosing a finding of plain error.   At worst, *Betancourt* indicates that Gomez cannot establish that there was an error, and thus he fails at the first prong.   Either way, he cannot prevail on plain error review under his Excessive Fines Clause challenge.

### E. Errors in the Written Judgment

Gomez argues that the judgment should be reformed to reflect the correct offense of conviction.  He points out that it incorrectly reflects that he pleaded guilty to the allegations involving 500 grams of methamphetamine and five kilograms of cocaine in addition to the 50 grams or more of methamphetamine ice.  He asserts that the clerical error can be corrected on remand pursuant to Federal Rule of Criminal Procedure 36.  The Government agrees that the case should be remanded and the written judgment should be reformed to correct the technical error that he possessed illegal drugs in addition to the 50 grams of methamphetamine ice.

No. 12-41219

The written judgment incorrectly reflects that Gomez also pleaded guilty to conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine and five grams of cocaine. The transcript of the rearraignment proceeding reflects that Gomez pleaded guilty to a conspiracy involving only 50 grams or more of methamphetamine ice.

A district court "may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36. A clerical error arises where "the court intended one thing but by merely clerical mistake or oversight did another." *United States v. Buendia–Rangel*, 553 F.3d 378, 379 (5th Cir. 2008) (citations and internal quotation marks omitted). This court has noted sua sponte that it must remand for the purpose of correcting irregularities contained in the judgment. *See United States v. Johnson*, 588 F.2d 961, 964 (5th Cir. 1979) (citing Fed. R. Crim. P. 36). In light of the record of the rearraignment and the Government's acknowledgment that the written judgment contains a clerical error that did not reflect the actual offense of conviction, we remand to the district court for the limited purpose of correcting the judgment to identify correctly the offense of conviction.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REMANDED for the limited purpose of correcting the written judgment to correctly identify the offense of conviction.