# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

────────

No. 16-40773
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2017

Lyle W. Cayce
Clerk

────────

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSHUA MARK FORD,

Defendant-Appellant

────────

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CR-215-1

────────

Before JOLLY, SMITH, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Joshua Mark Ford appeals his conviction and sentence after a jury found him guilty of two counts of possession with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), two counts of possession with the intent to distribute gamma hydroxybutrate (GHB) in violation of § 841(a)(1), two counts of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and two counts of being

────────────

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-40773

a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  On appeal, Ford argues that (i) the evidence at trial was insufficient to support his conviction for possession of a firearm in furtherance of a drug trafficking offense; (ii) the district court erred in denying his two motions to suppress; and (iii) the district court erred in applying a two-level enhancement to Ford's base offense level under U.S.S.G. § 3C1.2 for reckless endangerment during flight.

Ford's convictions arise out of two separate incidents.  The first incident occurred in November 2012, when Ford was pulled over after an officer observed a vehicle that Ford was driving swerve on the interstate and almost collide with another vehicle.  The arresting officer, believing that Ford and a female passenger in the vehicle were intoxicated and that Ford might possess a pocket knife, ultimately frisked Ford and found methamphetamine and a loaded magazine for a .38 caliber handgun on his person.  After Ford was arrested, a search of his vehicle revealed a plethora of illicit drugs, two firearms, and other indicia of drug trafficking.

The second incident occurred in June 2013, when a cooperating witness—at the direction of law enforcement—set up a "buy-bust operation," whereby she arranged for Ford to sell her two gallons of GHB in exchange for $2,000.  When Ford arrived at the agreed location to complete the transaction, officers converged on his vehicle.  Ford attempted to escape by accelerating and ramming his vehicle against a blocking vehicle, which was positioned by the law enforcement officers to prevent Ford from escaping.  Ford also drew a gun and pointed it at the officers.  A subsequent search of Ford's vehicle revealed illicit drugs and other indicia of drug trafficking.

*Sufficiency of the Evidence*

Ford claims that there was insufficient evidence to support his conviction for possessing a firearm in furtherance of a drug trafficking crime in connection

with the 2012 traffic stop.  When considering the sufficiency of the evidence, we evaluate all evidence, whether circumstantial or direct, "in the light most favorable to the Government with all reasonable inferences to be made in support of the jury's verdict." *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012) (internal quotation and citation omitted).  We will uphold the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc).

In this case, the arresting officer recovered a Glock 9 millimeter handgun under the driver's seat and a .38 caliber handgun underneath the center console of Ford's vehicle.  Not only were the firearms readily accessible to Ford as the driver of the vehicle, but evidence was presented that, before being asked to exit the vehicle, Ford initially reached under his seat—where the loaded Glock 9 millimeter was located—before he stepped out of the vehicle. The .38 caliber handgun, while not loaded, could have easily been loaded with the .38 caliber magazine found in Ford's pocket.  Also found in the vehicle in proximity to the firearms was a plethora of drugs (including methamphetamine divided into small baggies), syringes, containers with white powder substances, and other indicia of drug trafficking.  Also significant is the fact that the Ford possessed $1900 in cash, which the arresting officer testified he believed were the "proceeds of narcotics sales."  Finally, Ford's possession of the firearms was unlawful because Ford was admittedly a convicted felon.  From these facts, a rational jury could reasonably construe the evidence as establishing that that Ford possessed the firearms in furtherance of drug trafficking activity.  *See United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000); *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007).  Accordingly, Ford's conviction for possession of a firearm

in furtherance of a drug trafficking offense in connection with the 2012 traffic stop is affirmed.

*Motion to Suppress Regarding 2012 Traffic Stop*

Ford contends that the arresting officer's actions in connection with the 2012 traffic stop were not reasonably related in scope to the officer's suspicion that Ford was driving while intoxicated.  He also argues that the length of the stop was unreasonable.  Finally, Ford claims in conclusory fashion that the arresting officer did not pat him "down for his safety but to try to rummage around in [Ford's] clothing to see what he might find."

The legality of a traffic stop is examined under the two-pronged analysis described in *Terry v. Ohio*, 392 U.S. 1 (1968).  *United States v. Brigham*, 382 F.3d 500, 506-07 (5th Cir. 2004) (en banc).  The court must first examine whether the initial official action was justified.  *Id.*  Under the second prong of *Terry*, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."  *Brigham*, 382 F.3d at 507.  An officer may ask questions about the purpose and itinerary of the trip and ask questions on subjects completely unrelated to the circumstances causing the stop so long as those questions do not extend the stop's duration.  *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010).  "[I]f additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed."  *United States v. Lopez-Moreno*, 420 F.3d 420, 431 (5th Cir. 2005).

In this case, given Ford's slow movements, nonsensical answers to the arresting officer's questions, and erratic behavior, the record is clear that the arresting officer justifiably had a particularized and reasonable suspicion that Ford was driving while intoxicated.  *United States v. Chavez*, 281 F.3d 479, 485

(5th Cir. 2002). To further his investigation, the arresting officer asked Ford to exit the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977). After Ford exited the vehicle, Ford gave the arresting officer reason to believe that Ford possessed a pocket knife. As a result, the arresting officer proceeded to frisk Ford, and it was permissible for the arresting officer to do so. *See United States v. Michelletti*, 13 F.3d 838, 840-41 (5th Cir. 1994) (en banc). In the course of this frisk, the arresting officer recovered the magazine to a .38 caliber firearm and a baggy containing what the officer believed to be methamphetamine. Upon recovering the methamphetamine, the officer had probable cause to arrest Ford.

The 15 minutes that elapsed between when the officer stopped Ford's car and when the officer discovered the methamphetamine is not an impermissibly lengthy stop in light of Ford's continued erratic behavior, inconsistent and nonsensical answers, and other signs of intoxication. *See Pack*, 612 F.3d at 350, 355. Finally, we note that Ford does not argue on appeal that the search of his vehicle was unconstitutional due to lack of probable cause or a warrant. Accordingly, Ford has abandoned that argument. *See Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 926-27 (5th Cir. 2008).

*Motion to Suppress Regarding 2013 Buy and Bust*

Ford argues that the warrant obtained to search his car after the 2013 buy-and-bust operation was constitutionally deficient and that the automobile exception to the warrant requirement is not applicable because the officers created an exigent circumstance. We need not determine whether the warrant was deficient, because we hold that the officers also had probable cause to search Ford's vehicle and recover all of its contents—including the gun and all of the drugs contained therein–regardless of whether the warrant was constitutional or not.

It cannot be disputed that the officers had probable cause to arrest Ford for attempted distribution of a controlled substance.  *See* § 841; *United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999).  Officers also had probable cause to believe that evidence relevant to an illegal narcotics transaction was in Ford's vehicle based on Ford's acknowledgement that he intended to sell to a cooperating witness two gallons of GHB.  Additionally, officers had probable cause to believe that a handgun, unlawfully possessed by Ford, was also in his vehicle. *See United States v. Hearn*, 563 F.3d 95, 103 (5th Cir. 2009).  For these reasons alone, the officers' search of Ford's vehicle was not unconstitutional.  *See Arizona v. Gant*, 556 U.S. 332, 343 (2009).   Ford's argument that a warrantless search under the automobile exception is not justified where officers create an exigent circumstance has no merit.  *See Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (holding that the automobile exception has no separate exigency exception).

*U.S.S.G. § 3C1.2 Enhancement*

At sentencing, the district court applied a two-level enhancement to Ford's base offense level for reckless endangerment during flight under § 3C1.2.  The district court based the enhancement on its finding that, in connection with the 2013 buy-and-bust operation, Ford had accelerated and rammed his vehicle into a blocking vehicle in an attempt to escape and also drew a firearm.  On appeal, Ford argues that he could not have had the requisite intent to knowingly act recklessly or to flee.  He argues that his reckless actions "were done in the insensate panic caused by the" detonation of a distraction device (or "flash bang"), and the device could have elicited his "flight-or-flight impulse."

This court reviews the district court's application of the Sentencing Guidelines de novo.  *United States v. Reyna*, 130 F.3d 104, 112 (5th Cir. 1997).

It reviews the court's factual findings, including the finding that the defendant's conduct constituted reckless endangerment, for clear error. *Id.* Findings will be upheld if plausible in light of the record as a whole. *United States v. Gould*, 529 F.3d 274, 276 (5th Cir. 2008). The reckless endangerment enhancement applies if the "defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." § 3C1.2.

The district court's implicit finding that Ford acted recklessly and created a substantial risk of death or serious physical injury when he repeatedly rammed his vehicle into the blocking vehicle and pulled a gun on the officers is not clearly erroneous. Aside from the obvious risks to the officers' safety that Ford's conduct entailed, evidence was presented at trial that an officer was in the direct path of the blocking vehicle as Ford accelerated into the vehicle and eventually had to move because the situation was "unsafe." *See Gould*, 529 F.3d at 276-77; U.S.S.G. § 2A1.4, cmt. (n.1); *see also* § 3C1.2, cmt. (n.2) (incorporating § 2A1.4 definition by reference). Additionally, the district court's finding that Ford engaged in the subject conduct in an attempt to flee or avoid arrest is also not clearly erroneous. Although Ford did not testify that he engaged in the subject conduct in an attempt to flee, the district court was permitted to draw this inference from the fact that Ford possessed a plethora of illicit drugs and would have certainly known that he would be facing arrest and imprisonment if he was caught. *See United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006). There is no evidence in the record—and Ford cites none—that the flash bang device caused Ford to engage in the subject acts or obviated his otherwise clear intent to ram the blocking vehicle and draw his gun in an attempt to escape. Accordingly, Ford has failed to establish that the

district court committed a clear error in overruling his objection to the § 3C1.2 enhancement.

  Ford's convictions and sentence are hereby AFFIRMED.