**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-20355

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

EDILSON BUSTOS-USECHE, also known as Pacifico Duarte,
also known as Edilson Useche Bustos,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas, Houston Division

November 13, 2001

Before EMILIO M. GARZA, and PARKER, Circuit Judges, and ELLISON,
District Judge.[*]

ROBERT M. PARKER, Circuit Judge:

Defendant-Appellant Edilson Bustos-Useche pleaded guilty to
possession with intent to distribute a controlled substance and
conspiracy to possess with intent to distribute a controlled
substance in violation of the Maritime Drug Law Enforcement Act.

---

[*]District Judge of the Southern District of Texas sitting by
designation.

1

*See* 46 U.S.C. app. § 1903. The district court sentenced Bustos to 210 months in prison, followed by a five-year term of supervised release. On appeal, Bustos argues that the district court did not have jurisdiction to accept his guilty plea, that the court should have suppressed his statement to United States Coast Guard officials, and that the court erroneously enhanced his offense level for possession of a dangerous weapon.

## I. Facts

In May of 1999, the M/V CHINA BREEZE, a 510-foot Panamanian freighter bound for Portugal, sailed through the international waters south of the passage between Hispanola and Puerto Rico. The United States government suspected the vessel's use in drug trafficking based on information from federal authorities in Greece. On May 27, 1999, the Panamanian government issued a statement of no objection to allow the United States Coast Guard to board the freighter and search for contraband. The Coast Guard boarded the vessel and found four tons of cocaine in a disabled sewage tank. The following day, Panama gave express permission for the enforcement of United States laws on the vessel. The Coast Guard then ordered the M/V CHINA BREEZE to Galveston, Texas. During the ten-day voyage to Galveston, Coast Guard officials questioned the crew members about the hidden cocaine.

Agent Mihalopoulos of the Drug Enforcement Administration interviewed Bustos on May 31, 1999. Three other uniformed officers

2

and a translator were present during the interview. After Agent Mihalopoulos recited the *Miranda* Warnings, Bustos asked the officers whether his right to counsel entailed postponing the interview until a lawyer arrived. One of the officers stated that Bustos was correct. Bustos claimed that an officer told him that it would be in his best interest to cooperate because he was facing a potential twenty-year prison sentence. Bustos began crying and agreed to give a statement.

When asked about his identification, Bustos claimed that the documents identifying him as Pacifico Duarte, a Panamainian citizen born on December 4, 1975, were falsified. Bustos stated he was Edilson Bustos-Useche from Columbia, born on June 9, 1977. He explained that he traveled from Colombia to Panama in 1998 to obtain the false identification so that he could work as a seaman on a Panamanian vessel. Bustos admitted to being on three voyages where drugs were transported. Bustos claimed he was responsible for accounting for the cocaine on the M/V CHINA BREEZE. He also admitted that he possessed a .38 caliber revolver, which he threw overboard when he heard the Coast Guard helicopters.

Following his arraignment, Bustos filed a motion to suppress the statements he made to the Coast Guard and DEA officials. Bustos also objected to the court's jurisdiction claiming that his true date of birth was February 20, 1983, and therefore he was a juvenile at the time of the offense and indictment. Bustos also

3

filed a motion to incorporate and adopt the motions of his co-defendants, who argued that the court lacked jurisdiction under 42 U.S.C. app. § 1903(c) because Coast Guard officials did not have consent from the Panamanian government to enforce United States laws at the time the officials seized the cocaine. The district court rejected Bustos's arguments and set the case for trial. On November 9, 1999, Bustos volunteered an unconditional guilty plea to possession with intent to distribute a controlled substance under 46 U.S.C. app. § 1903(a) and conspiracy to possess with intent to distribute a controlled substance pursuant to 46 U.S.C. § 1903(j). Prior to sentencing, Bustos objected to the two-level enhancement recommendation in the presentence report, arguing that his possession of a firearm was unrelated to the charged offenses. The district court adopted the conclusions in the presentence report and sentenced Bustos to a 210-month term of imprisonment and five years of supervised release.

## II. Maritime Drug Law Enforcement Act

Bustos claims that the district court did not have jurisdiction to accept his plea because the M/V CHINA BREEZE was not subject to United States jurisdiction at the time the officers seized the hidden cocaine. Before reaching the merits of Bustos's argument, we assess whether his guilty plea prevents him from raising the issue on appeal.

### A. Effect of Bustos's Guilty Plea

A guilty plea forecloses appellate review of the factual and

4

legal elements necessary to sustain a final judgment of guilt and a lawful sentence. *See United States v. Broce*, 488 U.S. 563, 569 (1989). "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *Id*. at 570. A defendant who pleads guilty may challenge "the very power of the State to bring the defendant into court to answer the charge against him." *Blackledge v. Perry*, 417 U.S. 21, 30 (1974). Defendants may therefore raise jurisdictional defects on appeal. *See United States v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999) (explaining that errors on the face of an indictment constitute jurisdictional defects, which are not waived by a guilty plea); *United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993) ("By pleading guilty to an offense, therefore, a criminal defendant waives all non-jurisdictional defects preceding the plea."); *United States v. Ruelas*, 106 F.3d 1416, 1418 (9th Cir. 1997) (stating that a guilty plea does not confer jurisdiction on a district court to receive the plea). The validity of a guilty plea is a question of law we review de novo. *See United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000).[1]

A defendant violates the provisions of the Maritime Drug Law Enforcement Act if he possesses with intent to distribute a

---

[1] Bustos concedes that he has waived his non-jurisdictional arguments pertaining to the statements he made to authorities on board the M/V CHINA BREEZE.

controlled substance while on board a vessel subject to the jurisdiction of the United States. *See* 46 U.S.C. app. § 1903(a). A marine vessel flying the flag of a foreign nation is subject to the jurisdiction of the United States if "the flag nation has consented or waived objection to the enforcement of United States law . . .." 46 U.S.C. app. § 1903(c)(1)(C). Bustos argues that if the United States did not have jurisdiction over the vessel, then the district court did not have jurisdiction to accept his guilty plea.

Bustos's argument hinges on whether the jurisdictional requirements of section 1903 are merely substantive elements of the crime or prerequisites to the district court's subject matter jurisdiction. Certain elements of an offense may be jurisdictional in nature, yet not a condition to subject matter jurisdiction. *See, e.g.*, *United States v. Johnson*, 194 F.3d 657, 659 (5th Cir. 1999) (holding that the interstate commerce requirement is merely an element of the offense and not essential to subject matter jurisdiction), *vacated on other grounds*, *United States v. Johnson*, 529 U.S. 848 (2000); *United States v. Rea*, 169 F.3d 1111, 1113 (8th Cir. 1999) (same); *United States v. Robinson*, 119 F.3d 1205, 1212 n.4 (5th Cir. 1997) (noting that the interstate commerce element in the Hobbs Act is not purely jurisdictional). Based on the former language of section 1903, courts construed the phrase "a vessel subject to the jurisdiction of the United States" as a factual

6

element of the offense.  *See United States v. Cardales*, 168 F.3d 548, 554 (1st Cir.), *cert. denied*, 528 U.S. 338 (1999); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1256 (9th Cir. 1998); *United States v. Medina*, 90 F.3d 459, 461 (11th Cir. 1996).  *Cf. United States v. Pretel*, 939 F.2d 233, 236-37 (5th Cir. 1991) (stating that whether an exiled Panamanian leader had authority to consent was a political question that was not appropriate for submission to a jury).

Congress added subsection (f) to the statute in 1996. Subsection (f) states that "[j]urisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense.  All jurisdictional issues arising under this chapter are preliminary questions of law to be determined by the trial judge."  46 U.S.C. app. § 1903(f).  Based on this addition to the statute, we conclude that the district court's preliminary determination of whether a flag nation has consented or waived objection to the enforcement of United States law is a prerequisite to the court's jurisdiction under § 1903.[2]  Bustos is therefore not foreclosed from raising the issue on appeal.

B.  Jurisdiction Under the Maritime Drug Law Enforcement Act

Bustos argues that the district court did not have jurisdiction under the statute because the United States lacked

_____

[2] Circuit courts have recognized that subsection (f) eliminates jurisdiction as an element of the offense.  *See Cardales*, 168 F.3d at 554 n.3; *Klimavicius-Viloria*, 144 F.3d at 1256 n.1.

7

jurisdiction over the vessel at the time Coast Guard officials seized the cocaine. Bustos claims that the Coast Guard received permission to enforce United States law the day after the drugs were discovered.[3] He argues that he cannot be prosecuted for violating section 1903 if the statute did not apply to him during the time he possessed the cocaine.[4] We review the district court's legal conclusions on jurisdiction de novo. *See Foster v. Townsley*, 243 F.3d 210, 213 (5th Cir. 2001).

Persons charged with a crime under section 1903 do not have standing to raise issues of international law. *See* 46 U.S.C. app. § 1903(d). By enacting section 1903(d), Congress intended to eliminate jurisdictional impediments to convictions under the statute. *See* S. REP. NO. 99-530, at 16 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5986, 6001. As set forth in the Senate Report:

> In the view of the Committee, only the flag nation of a
> vessel should have a right to question whether the Coast

---

[3] Although there is some debate over the effect of Panama's first approval to board and search the M/V CHINA BREEZE, we will assume for purposes of this appeal that the Coast Guard did not receive permission to enforce United States law until after the cocaine was discovered and seized.

[4] Bustos avoids raising issues concerning treaties or domestic laws that have no relation to the jurisdiction of United States courts. *See, e.g.*, *United States v. Alvarez-Machain*, 504 U.S. 655 (1992) (holding that a defendant had no rights under international law or an extradition treaty); *United States v. Postal*, 589 F.2d 862, 875-876, 875 n.19 (5th Cir. 1979) (explaining that there is no defect in a court's jurisdiction for violation of domestic laws that are unrelated to the court's jurisdiction).

Guard has boarded that vessel with the required consent. The international law of jurisdiction is an issue between sovereign nations. Drug smuggling is universally recognized criminal behavior, and defendants should not be allowed to inject these collateral issues into their trials.

*Id.* The legitimacy of a flag nation's consent is therefore a question of international law that can be raised only by the foreign nation. *See, e.g.*, *United States v. Greer*, 223 F.3d 41, 55-56 (2d Cir. 2000) ("[T]he MDLEA requires the consent of foreign nations for purposes of international comity and diplomatic courtesy, not as a protection for defendants."). There is no dispute that the Panamanian government consented to the enforcement of United States law on May 28, 1999.[5]

While Bustos lacks standing to question whether Panama's consent effectively granted jurisdiction to the United States, he may nonetheless argue that the district court failed to satisfy the jurisdictional requirements of the statute itself. The Maritime Drug Law Enforcement Act is "United States law," not "international law." *See United States v. Maynard*, 888 F.2d 918, 926-27 (1st Cir. 1989); *United States v. Mena*, 863 F.2d 1522, 1530-31 (11th Cir. 1989). "[H]ad Congress intended to deprive defendants of standing

---

[5] Consent or waiver of objection by the flag nation is conclusively proven by certification from the Secretary of State or the Secretary's designee. *See* 46 U.S.C. app. § 1903(c).

9

to object to the government's non-compliance with the terms of section 1903(a), Congress would not merely have prevented defendants from raising objections under international law." *Mena*, 863 F.2d at 1531. Bustos does not argue that Panama failed to effectively consent to the enforcement of United States law on May 28, 1999. He argues that section 1903 requires a flag nation to consent before United States officials seize illegal cargo. Because his argument involves statutory interpretation as opposed to application of international law, he is not barred from raising his argument on appeal.

The exact timing of a flag nation's permission is not a condition to consent under subsection (c)(1)(C). A defendant may be tried for an offense under the statute if the flag nation acquiesces after a vessel is commandeered. *See Greer*, 223 F.3d at 55 (finding that the United States had jurisdiction over a vessel even when the flag nation consented five years after the completion of the offense). *See also Cardales*, 168 F.3d at 552; *United States v. Medjuck*, 48 F.3d 1107 (9th Cir. 1995); *United States v. Khan*, 35 F.3d 426, 431 (9th Cir. 1994). The only statutory prerequisite to the district court's jurisdiction under section 1903(c)(1)(C) is that the flag nation consent to the enforcement of United States law before trial. Because Panama consented to the enforcement of United States law over the M/V CHINA BREEZE on May 28, 1999, the district court satisfied the jurisdictional

10

requirements of the statute.[6]

### III.  Whether Bustos Was a Juvenile

Bustos claims that the district court lacked jurisdiction to accept his plea because he was a juvenile at the time of the offense and indictment.[7]  We review the district court's factual findings pertaining to Bustos's age for clear error.  *See, e.g.,* *United States v. Juvenile No. 1*, 118 F.3d 298, 307 (1997).

Bustos admitted on numerous occasions that he was born on June 9, 1977.  On board the M/V CHINA BREEZE, Bustos told officials that the Panamanian documents identifying him as Pacifico Duarte were

---

[6] We recognize that the language in 46 U.S.C. app. § 1903(f) could arguably be interpreted to relate to the district court's authority to act on this case, separate and apart from whether the United States had jurisdiction over the vessel.  However, we are not convinced that this is a proper interpretation.  In our view, the United States's jurisdiction over the vessel and the district court's jurisdiction to act are inextricably intertwined.  Because Panama consented to the enforcement of United States law over the M/V China Breeze prior to Bustos's trial, the district court had jurisdiction to act on the case so long as the criminal statute under which Bustos was prosecuted meets the subject matter jurisdiction requirements of Article III of the United States Constitution and 18 U.S.C. § 3231.  Section 1903(a) defines a "law of the United States" sufficiently enough to satisfy Article III and defines an "offense against the law of the United States" sufficiently enough to satisfy 18 U.S.C. § 3231.  Therefore, the district court had the authority to act on this case.

[7] In order for the district court to assert jurisdiction over a juvenile, the United States Attorney General must certify the case pursuant to 18 U.S.C. § 5032.  "The need for certification . . . is a jurisdictional requirement; therefore, a challenge to the legal sufficiency of the certification . . . can be raised at any time." *United States v. Sealed Juvenile 1*, 225 F.3d 507, 508 (5th Cir. 2000).  Bustos's argument is therefore jurisdictional and cannot be waived by a valid guilty plea.  *See Owens*, 996 F.2d at 50.

fraudulent. He stated his real name was Edilson Bustos-Useche born on June 9, 1977. Bustos claimed he was twenty-one at the Harris County Jail and at his arraignment before the magistrate judge. Bustos again admitted the June 9, 1977 date of birth in a handwritten statement. A Columbian identification document procured after Bustos's arrest also listed June 9, 1977 as his date of birth.

Bustos claimed that the Columbian document was also fraudulent and that his date of birth was actually February 20, 1983. Bustos offered no documentation in support of his testimony. In light of Bustos's repeated statements and the Columbian identification document, the district court did not clearly err by concluding that Bustos was an adult at the time of the offense and indictment.

IV. Increase of Bustos's Base Offense Level

Finally, Bustos argues that the district court should not have increased his offense level by two points for possession of a dangerous weapon. Although he admits to carrying a firearm on board the M/V CHINA BREEZE, he claims that he did not possess the weapon to assist himself in committing the offense. The district court's conclusion that Bustos possessed a weapon during the commission of his offense is a factual determination that we review for clear error. *See United States v. Westbrook*, 119 F.3d 1176, 1192 (5th Cir. 1997).

The Sentencing Guidelines provide for a two-level increase in

12

a defendant's offense level for possession of a dangerous weapon. U.S.S.G. § 2D1.1(b)(1). The commentary suggests adjusting the offense level if the weapon was present during the commission of the offense, "unless it is clearly improbable that the weapon was connected with the offense." *Id.* at cmt. 3. "Possession of a firearm will enhance a defendant's sentence . . . where a temporal and spatial relationship exists between the weapon, the drug-trafficking activity, and the defendant." *United States v. Marmolejo*, 106 F.3d 1213, 1216 (5th Cir. 1997).

Bustos admits possessing the firearm when he boarded the M/V CHINA BREEZE. Bustos boarded the vessel from the same speed boats that transported the cocaine from Columbia. He explained that he brought similar weapons on earlier drug smuggling voyages, but always gave them to the captain when he boarded the vessel. Bustos admits that he did not give the gun to the captain on this voyage. He claims that he threw the weapon overboard when he heard the approaching Coast Guard helicopters. Bustos argues that he never used the weapon or showed it to anyone on board.

We will not reverse the district court's sentence adjustment simply because the defendant did not "display or brandish" the firearm. *Marmolejo*, 106 F.3d at 1216. Bustos boarded the M/V CHINA BREEZE with the weapon at the same time the cocaine was loaded on the vessel. His only duty on the voyage was to account for the cocaine. The firearm remained in his possession until he

13

threw it overboard.  Based on these facts, there was a sufficient connection between the weapon and the offense.  The district court's two-level adjustment was appropriate.

## V. Conclusion

We find that the district court satisfied the statutory requirements for jurisdiction under 46 U.S.C. app. § 1903.  We also affirm the court's conclusions that Bustos was not a juvenile and that he possessed a firearm in conjunction with trafficking narcotics.  Bustos's remaining issues on appeal are foreclosed by his valid guilty plea.

AFFIRMED