[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11807
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00178-MSS-AAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NIXON JAVIER BAUTISTA ORTIZ,

BRYAN FELIPE BAUTISTA ORTIZ,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(April 13, 2020)

Before LUCK, LAGOA and MARCUS, Circuit Judges.

PER CURIAM:

Nixon Javier Bautista Ortiz ("Nixon") and Bryan Felipe Bautista Ortiz

("Bryan") (collectively "appellants") jointly appeal their convictions for violations

of the Maritime Drug Law Enforcement Act ("MDLEA").  Appellants argue that the district court lacked subject matter jurisdiction over their prosecution.  After thorough review, we affirm.

We review a district court's interpretation and application of a statute concerning its subject-matter jurisdiction de novo but review factual findings with respect to jurisdiction for clear error.  United States v. Cruickshank, 837 F.3d 1182, 1187 (11th Cir. 2016).  Parties may not stipulate to federal jurisdiction.  United States v. Iguaran, 821 F.3d 1335, 1337 (11th Cir. 2016).  However, parties may stipulate to facts that bear on a jurisdictional inquiry, and it is the court's task to determine whether the stipulated facts give rise to jurisdiction.  Id.

We review a district court's denial of an evidentiary hearing for abuse of discretion.  United States v. Barsoum, 763 F.3d 1321, 1328 (11th Cir. 2014).  A district court is not compelled to hold an evidentiary hearing if a defendant fails to allege facts that, if proven true, would require the grant of relief.  United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984).  An appellant abandons an argument on appeal unless it is "plainly and prominently" raised in his briefing.  United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

The MDLEA criminalizes possession with intent to distribute a controlled substance on board a vessel subject to United States jurisdiction.  46 U.S.C. § 70503(a)(1), (e)(1).  Relevant here, the MDLEA defines a vessel subject to United

2

States jurisdiction as a vessel without nationality. Id. § 70502(c)(1)(A). A vessel without nationality is a vessel in which the master: (1) fails, on request of a United States officer, to make a claim of nationality for that vessel; or (2) makes a claim of registry that the claimed nation of registry does not affirmatively and unequivocally confirm. Id. § 70502(d)(1)(B), (C). A U.S. Coast Guard ("USCG") petty officer is a United States officer who may make inquiries, searches, seizures, and arrests on vessels subject to United States jurisdiction. 14 U.S.C. § 89(a). The MDLEA provides three exclusive methods for the master to make a claim of nationality for the vessel: (1) possessing on board the vessel documents evidencing the vessel's nationality; (2) flying its nation's ensign or flag; or (3) verbally claiming nationality or registry. United States v. Obando, 891 F.3d 929, 933 (11th Cir. 2018); see 46 U.S.C. § 70502(e). A painted flag does not constitute a claim of nationality. Obando, 891 F.3d at 934.

If, after a claim of registry is made, a foreign nation responds that it can neither confirm nor deny the registry of that vessel, then that vessel is subject to United States jurisdiction as a vessel without nationality. United States v. Hernandez, 864 F.3d 1292, 1302-03 (11th Cir. 2017). "MDLEA statelessness does not turn on actual statelessness, but rather on the response of the foreign government." Id. at 1299. The response of a foreign nation to a claim of registry is proved conclusively by certification of the U.S. Secretary of State or the Secretary's designee. 46 U.S.C. §

3

70502(d)(2); Hernandez, 864 F.3d at 1299. "The very concept of a conclusive proof entails not only that no detail or corroboration is needed, but also that any contrary evidence is futile." Hernandez, 864 F.3d at 1300.

In Hernandez, the defendant alleged that the government acted in bad faith when it requested a confirmation of registry from Guatemalan authorities. Id. at 1299. Specifically, the defendant argued that, when USCG officials sought a claim of registry from Guatemalan officials, it intentionally withheld registration documents showing that the vessel was registered in Guatemala. Id. at 1297-98. We held that, assuming those bad faith actions to be true, the government had still conclusively proven jurisdiction by obtaining the State Department's certification. Id. at 1302. "If the United States hid information from Guatemala, then the Guatemalan government may complain in some form to the U.S. government; but Congress has instructed that [MDLEA] defendants may not litigate those complaints in an MDLEA prosecution." Id. (discussing 46 U.S.C. § 70505). A defendant charged with a MDLEA violation "does not have standing to raise a claim of failure to comply with international law as a basis for a defense." 46 U.S.C. § 70505.

Further, in Hernandez, the defendant argued that the government must have jurisdiction over the vessel prior to the commission of the underlying offense. 864 F.3d at 1303. We held that MDLEA jurisdiction "is not an element of the crime that the [g]overnment must prove beyond a reasonable doubt." Id. We explained that

4

relying on the State Department's certification eliminated any timing argument because, to obtain jurisdiction over a MDLEA prosecution, the government need only show "that the statutory requirements for MDLEA prosecution in U.S. courts have been met." Id. at 1304.

Finally, in Hernandez, the Guatemalan government responded to the claim of registry "before the search of the ship." Id. at 1296. However, we noted that the State Department's certification was obtained based on Guatemala's "post-crime non-assertion of registry." Id. at 1304. Indeed, the MDLEA does not contain an explicit timing requirement related to jurisdiction. See 46 U.S.C. § 70504 (providing that jurisdiction "is not an element of an offense" and should be determined solely by the trial judge); id. § 70502(d)(2) (providing that the response by a foreign nation "may be made by radio, telephone, or similar oral or electronic means, and is proved conclusively by certification of the Secretary of State or the Secretary's designee").

A defendant who is a "non-U.S. citizen and non-U.S. resident, and who has no significant connection to the United States," cannot raise a Fourth Amendment challenge in the MDLEA context. United States v. Cabezas-Montano, 949 F.3d 567, 594 (11th Cir. 2020) (applying United States v. Verdugo-Urquidez, 494 U.S. 259, 274-75 (1990) and holding that a MDLEA defendant could not raise a Fourth Amendment challenge to the USCG's delay in bringing him before a magistrate

5

judge).  In Verdugo-Urquidez, the Supreme Court held that the Fourth Amendment protects only "the people" of the United States.  494 U.S. at 269 (quotations omitted).

Here, the district court did not err in determining that it had jurisdiction over appellants under the MDLEA.  The main dispute between the parties centers on whether the appellants told the USCG officers who boarded their vessel, through USCG Interpreter Rivera, where the vessel was registered.  While appellants claim the vessel's master, appellant Nixon, reported to the USCG officers that the boat, called the Nino Divino, was registered in Ecuador, the government says that appellants told the officers that they did not know where the vessel was registered and made references to both Ecuador and Colombia.  Some months after this encounter, however, the U.S. State Department certified the United States' jurisdiction over the vessel, based on Nixon's statement that the last port of call was Colombia and that the vessel's painted flag was Colombian, Colombia's response that it could neither confirm nor deny the vessel's nationality, the government's later understanding that Nixon had made a claim of Ecuadorian nationality for the vessel, and Ecuador's response that it could neither confirm nor deny the vessel's nationality.  On this record, the State Department certified that the boat was without nationality under 46 U.S.C. § 70502(d)(1)(C) and, thus, subject to the jurisdiction of the United States.

On this record, jurisdiction was conclusively proven in this case when the State Department issued its certification.  See 46 U.S.C. § 70502(d)(2); Hernandez, 864 F.3d at 1299.  As for the appellants' claim that the USCG officers acted in bad faith by misrepresenting Nixon's statements during the radio report of the vessel's nationality, we've held that claims of bad faith may only be lodged by the country that is contacted -- here, Ecuador -- and not the defendants in a MDLEA prosecution.  Hernandez, 864 F.3d at 1302 (finding that the government's concealment of information from a foreign nation would not invalidate a State Department certification because such claims of bad faith are issues of international law to be resolved between the United States and foreign nations).

Further, the MDLEA contains no timing requirement for obtaining that certification and, thus, it was not error for the government to obtain that certification three months after appellants' arrest.  See, e.g., United States v. Greer, 285 F.3d 158, 175 (2d Cir. 2002) (holding that a nation's consent, obtained five years after the original indictment, related back to the activity that occurred prior to consent) (persuasive authority); United States v. Bustos-Useche, 273 F.3d 622, 627 (5th Cir. 2001) (providing that the "exact timing of a flag nation's permission is not a condition to consent under" the MDLEA) (persuasive authority).  So even if we were to assume that the appellants' claims about Nixon's claim of registry and the government's bad faith actions are true, the district court did not abuse its discretion

7

in failing to hold an evidentiary hearing because those facts cannot overcome the State Department's conclusive proof of jurisdiction.  See Hernandez, 864 F.3d at 1300 (noting that it is futile to submit evidence that attempts to disprove conclusive evidence).[1]

Finally, the appellants' probable cause arguments are merely recast jurisdiction arguments.  In any event, we've held that the Fourth Amendment does not apply to non-U.S. citizens and non-U.S. residents subject to the MDLEA. Cabezas-Montano, 949 F.3d at 589-90.   Thus, the appellants lack Fourth Amendment standing to raise probable cause arguments on appeal.  Accordingly, we affirm the appellants' convictions.

**AFFIRMED**.

---

[1] We add that by not raising any arguments on appeal about any documents found on board the Nino Divino or of any flying flag, appellants have abandoned any arguments that a claim of nationality was made for those reasons.  See Jernigan, 341 F.3d at 1283 n.8.  Regardless, the Colombian flag painted on the vessel was not flying and, therefore, would not satisfy a claim of nationality.  See Obando, 891 F.3d at 933.  Further, appellants have presented no evidence that registration documents were recovered from the Nino Divino.

8