# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 27, 2025

Lyle W. Cayce
Clerk

No. 22-40393

United States of America,

*Plaintiff—Appellee*,

*versus*

Christian Leonardo Franco Posligua,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:21-CR-132-3

_____

Before Dennis, Richman, and Ho, *Circuit Judges*.

Per Curiam:[*]

Christian Leonardo Franco Posligua pleaded guilty to conspiracy to possess, with intent to distribute, a controlled substance on board a vessel subject to the jurisdiction of the United States in violation of the Maritime Drug Law Enforcement Act (MDLEA). Posligua appealed his conviction, arguing both that the district court did not have subject matter jurisdiction, and, alternatively, that he did not enter a knowing and voluntary guilty plea.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40393

We previously "order[ed] a limited remand for the district court to consider, in the first instance, whether it ha[d] jurisdiction."[1]  The district court concluded it did.  We agree, and we now conclude that Posligua's plea was knowing and voluntary.  Accordingly, we affirm Posligua's conviction.

## I

In April 2021, United States Coast Guard officers encountered a low-profile vessel in the Pacific Ocean while on a routine patrol.  The vessel was "seaward of any State's territorial sea."  Suspecting the vessel to be trafficking illicit contraband, officers approached it.  They found four individuals aboard, including Posligua, who is a fisherman from Ecuador.

None of the individuals claimed to be the vessel's captain, although the Government represented during Posligua's sentencing hearing—and Posligua did not contest—that two of the individuals later stated Posligua was the captain.  The vessel had no physical indicia of nationality and no state documents on board.  Posligua asserted the vessel was of Colombian nationality, but Colombia could neither confirm nor deny the vessel's nationality.  Upon boarding, Coast Guard officers found 1,100 kilograms of cocaine.

A grand jury charged Posligua with conspiracy to possess, with intent to distribute, a controlled substance on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b).[2]  The indictment charged that the vessel was "subject to the

_____

[1] *United States v. Posligua*, No. 22-40393, 2023 WL 4044438, at *1 (5th Cir. June 15, 2023) (per curiam).

[2] *See* 46 U.S.C. § 70503(a)(1) ("While on board a covered vessel, an individual may not knowingly or intentionally . . . manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance."); *id.* § 70506(b) ("A person attempting

jurisdiction of the United States" because it was "a vessel without nationality" under 46 U.S.C. § 70502(c)(1)(A).[3]

Posligua pleaded guilty pursuant to a plea agreement. As part of that agreement, Posligua signed a factual basis admitting he "made an agreement to commit the crime charged in the [i]ndictment." The factual basis did not, however, mention the vessel from which the cocaine was seized. Posligua also agreed to waive his right to appeal except in limited circumstances, although the parties agree his waiver is inapplicable here. This was the second time Posligua had pleaded guilty to participating in a conspiracy to violate the MDLEA; "[f]our years before the events that led to the present appeal, Posligua . . . was found on a vessel that was transporting cocaine," and "[h]e pled guilty in the District Court for the Southern District of New York."[4]

At his plea hearing in the present case, Posligua responded in the affirmative when the magistrate judge asked him whether he "underst[ood] the nature of the charges," "underst[ood] the elements of the offense that were set forth in [his] case," and "admit[ted] that [he] committed each one of those elements." The magistrate judge recommended that the district court accept Posligua's plea. The district court accepted Posligua's plea, as well as the plea agreement, and sentenced Posligua to 180 months of imprisonment.

_____

or conspiring to violate section 70503 of this title is subject to the same penalties as provided for violating section 70503.").

[3] *See* 46 U.S.C. § 70502(c)(1)(A) ("In this chapter, the term 'vessel subject to the jurisdiction of the United States' includes . . . a vessel without nationality.").

[4] *Posligua*, 2023 WL 4044438, at *1.

No. 22-40393

However, neither party asked the district court to decide, and the district court did not determine, whether the vessel was subject to the jurisdiction of the United States.

Posligua timely appealed, challenging the district court's subject matter jurisdiction under the MDLEA. Because the question of whether a vessel is subject to the jurisdiction of the United States under the MDLEA is a "preliminary question[] of law to be determined solely by the trial judge,"[5] we "order[ed] a limited remand for the district court to consider, in the first instance, whether it ha[d] jurisdiction."[6] After our limited remand, the Government submitted an affidavit reiterating that Posligua had been the person in charge of the vessel, and the district court concluded it had subject matter jurisdiction.

Posligua separately appealed that order, and that second appeal was assigned to a different panel.[7] However, that panel dismissed the second appeal because our panel retained jurisdiction over Posligua's first appeal after we ordered a limited remand, and the district court's "order on limited remand does not qualify as a final decision that is appealable in this court."[8] Now that the district court has determined its jurisdiction in the first instance, we address the merits of Posligua's first appeal.

_____

[5] 46 U.S.C. § 70504(a) ("Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.").

[6] *Posligua*, 2023 WL 4044438, at *1.

[7] *See United States v. Posligua*, 120 F.4th 1293 (5th Cir. 2024).

[8] *Id.* at 1294 (quoting *Blunt v. Shelby*, 781 F. App'x 376, 377 (5th Cir. 2019) (per curiam)).

No. 22-40393

## II

### A

The MDLEA prohibits, among other things, conspiring to possess with intent to distribute a controlled substance aboard a "covered vessel," which includes "a vessel subject to the jurisdiction of the United States."[9] The MDLEA makes clear that "[j]urisdiction of the United States with respect to a vessel . . . is not an element of an offense."[10] However, circuit courts have split on whether the term "subject to the jurisdiction of the United States" limits the subject matter jurisdiction of federal courts, similar to diversity jurisdiction's amount-in-controversy requirement,[11] or defines the prescriptive reach of the MDLEA.[12] The Second Circuit has explained that "[i]nterpreting the phrase as a limitation *on the court's jurisdiction*, rather than *on the reach of the statute*, would give the prohibitory clauses a highly

---

[9] 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b).

[10] *Id.* § 70504(a).

[11] *United States v. Bustos-Useche*, 273 F.3d 622, 626 (5th Cir. 2001) ("[T]he district court's preliminary determination of whether a flag nation has consented or waived objection to the enforcement of United States law [such that the vessel is subject to jurisdiction of the United States] is a prerequisite to the court's jurisdiction . . . ."); *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008) ("We have interpreted the 'on board a vessel subject to the jurisdiction of the United States' portion of the MDLEA as a congressionally imposed limit on courts' subject matter jurisdiction, akin to the amount-in-controversy requirement contained in 28 U.S.C. § 1332."); *United States v. Miranda*, 780 F.3d 1185, 1192 (D.C. Cir. 2015) ("[T]he question whether a vessel is 'subject to the jurisdiction of the United States' is a matter of subject-matter jurisdiction.").

[12] *United States v. Prado*, 933 F.3d 121, 132 (2d Cir. 2019) ("[I]ts function is not to confer subject matter jurisdiction on the federal courts, but rather to specify the reach of the statute beyond the customary borders of the United States."); *United States v. Dávila-Reyes*, 84 F.4th 400, 412 (1st Cir. 2023) (en banc) ("In sum, the MDLEA's statutory text provides no support for the conclusion that Congress intended the phrase 'subject to the jurisdiction of the United States' in § 70503(e)(1) to impose a limitation on the subject matter jurisdiction of courts."), *cert. denied*, 144 S. Ct. 2634 (2024).

5

expansive and improbable meaning that would affront the sovereignty of other nations."[13]

Our decision in *United States v. Bustos-Useche*[14] instructs us to construe this language as a limitation on subject matter jurisdiction.[15] In that case, we considered "whether the jurisdictional requirements of [the MDLEA, then codified at 46 U.S.C. app. § 1903,] are merely substantive elements of the crime or prerequisites to the district court's subject matter jurisdiction."[16] We concluded "that the district court's preliminary determination of whether" a vessel is subject to the jurisdiction of the United States "is a prerequisite to the court's jurisdiction."[17]

We further observed in a somewhat cryptic footnote—in our analysis of whether the vessel there was subject to the jurisdiction of the United States such that there was subject matter jurisdiction—that the language "could arguably be interpreted to relate to the district court's authority to act on this case, separate and apart from whether the United States had jurisdiction over the vessel."[18] We were "not convinced," however, that "this [was] a proper interpretation" because "the United States's jurisdiction over the vessel and the district court's jurisdiction to act are inextricably intertwined."[19] In the same footnote, we noted that "the district court had jurisdiction to act on the case so long as the criminal statute . . . meets the subject matter jurisdiction

---

[13] *Prado*, 933 F.3d at 134.

[14] 273 F.3d 622 (5th Cir. 2001).

[15] *Id.* at 626.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 628 n.6.

[19] *Id.*

requirements of Article III of the United States Constitution and 18 U.S.C. § 3231,"[20] the latter of which provides that "[t]he district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States."[21]

The United States argues that our citation to the general grant of federal criminal subject matter jurisdiction in 18 U.S.C. § 3231 "contradicts the view" that the MDLEA's jurisdiction language is better understood as limiting subject matter jurisdiction rather than defining the MDLEA's prescriptive reach. Whatever merit there may be to this argument, however, it is clear that *Bustos-Useche* requires us to consider the MDLEA's jurisdictional requirements here as part of the subject matter jurisdiction inquiry. To the extent the United States invites us to chart a new course, we decline to do so because our "well-settled" rule of orderliness prevents us from "overturn[ing] another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court."[22] Accordingly, we review the district court's determination of subject matter jurisdiction de novo.[23]

## B

"[T]he term 'vessel subject to the jurisdiction of the United States' includes," as relevant here, "a vessel without nationality."[24] A "'vessel

---

[20] *Id.*

[21] 18 U.S.C. § 3231.

[22] *Anderson v. Hutson*, 114 F.4th 408, 416 n.11 (5th Cir. 2024), *petition for cert. filed*, No. 24-1022 (U.S. Mar. 25, 2025) (quoting *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014)).

[23] *United States v. Isgar*, 739 F.3d 829, 838 (5th Cir. 2014).

[24] 46 U.S.C. § 70502(c)(1)(A).

without nationality' includes . . . a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality."[25]

The record establishes that the vessel here was a vessel without nationality such that the district court had subject matter jurisdiction over Posligua's MDLEA charge. Posligua was the individual in charge of the vessel. He asserted the vessel was of Colombian nationality. But the vessel had no physical indicia of nationality or state documents on board, and Colombia did not affirmatively and unequivocally assert that the vessel was Colombian. Rather, Colombia could neither confirm nor deny that the vessel was Colombian. All these facts appear in either (or both) the Government's affidavit it submitted after our limited remand or Posligua's presentence report. Posligua stated in his district court sentencing memorandum that he "does not deny the[] facts" in his presentence report, and he affirmed during his sentencing hearing that he both reviewed and understood the report, and that it "adequately covers [his] background."[26]

Still, we acknowledge that Posligua's claim of Colombian *nationality* arguably does not constitute a claim of Colombian *registry*.[27] In *United States*

---

[25] *Id.* § 70502(d)(1)(C).

[26] ROA.86 (Posligua's district court sentencing memorandum) ("Mr. Franco [(Posligua)] was involved in this drug offense and he accepts full responsibility for his involvement in the offense as charged and as generally described in the Presentence Report. He does not deny these facts and he does not negate the seriousness of this crime or his involvement in it."); *see also* ROA.147 (Posligua affirming in sentencing that presentence report "adequately covers [his] background").

[27] *See* ROA.178 (PSR ¶ 7) ("Posligua advised the vessel was of Colombian nationality."); Ex. A Supp'ing Government's Br. & Mot. Prelim. Determination of Jurisdiction Under MDLEA at 2, *United States v. Posligua*, No. 4:21-CR-132-3 (E.D. Tex.

*v. Dávila-Reyes*,[28] then-CHIEF JUDGE HOWARD of the First Circuit argued in a concurrence that the difference matters when applying this definition of "vessel without nationality" under the MDLEA.[29]  However, the parties here do not advance this argument, and, in any event, we remain satisfied that the district court had subject matter jurisdiction for several additional reasons.  First, we are persuaded by the majority's retort to CHIEF JUDGE HOWARD's argument: "Although the terms 'nationality' and 'registry,' in formal usage, are not interchangeable, the MDLEA treats them as such throughout § 70502."[30]  While the First Circuit en banc reversed the panel on other grounds, the en banc court did not expressly reject this contention.[31]  Second, other circuits have treated the two terms as interchangeable in this context.[32]

And third, even if the distinction between a claim of registry and a claim of nationality proved dispositive here, we note that the definition of a "'vessel without nationality' *includes* . . . a vessel aboard which the master or individual in charge makes a claim of registry."[33]  Relying on the MDLEA's use of "includes," the First Circuit concluded that "[t]he listed examples [of

---

Jan. 2, 2024), ECF No. 184-1 (affidavit stating that "the person in charge made a verbal claim of Colombian nationality for the vessel"); *cf.* Order on Jurisdiction, ECF 91, at 3 ("The affidavit states that . . . [t]he person in charge of the vessel—Defendant Posligua—claimed the vessel was Colombian.").

[28] 23 F.4th 153 (1st Cir. 2022), *rev'd on other grounds en banc*, 84 F.4th 400 (1st Cir. 2023).

[29] *Id.* at 195-96 (HOWARD, C.J., concurring).

[30] *Dávila-Reyes*, 23 F.4th at 165 (majority opinion).

[31] *See United States v. Dávila-Reyes*, 84 F.4th 400, 415-17 (1st Cir. 2023) (en banc).

[32] *See Dávila-Reyes*, 23 F.4th at 168-69 (collecting cases).

[33] 46 U.S.C. § 70502(d)(1)(C) (emphasis added).

vessels without nationality] do not exhaust the scope of section 70502(d),"[34] and the Eleventh Circuit agreed that "[s]ection 70502(d)(1) does not list every circumstance in which a vessel lacks nationality."[35] We need not and do not decide today whether to adopt a similar construction because we are satisfied the Government has established that the vessel was without nationality under § 70502(d)(1)(C).[36] However, we make this observation to emphasize that it would be anomalous to conclude Posligua's vessel was *not* "without nationality" simply because he claimed it was of Colombian *nationality* rather than *registry*, even though Colombia could not unequivocally confirm his claim.

At bottom, under the MDLEA, subject matter jurisdiction exists if the vessel predicating the MDLEA charge is subject to the jurisdiction of the United States, and a vessel without nationality is subject to the jurisdiction of the United States. The indictment charged that the vessel was without nationality, and the record, as described above, adequately establishes that the vessel was without nationality.

---

[34] *United States v. Matos-Luchi*, 627 F.3d 1, 4 (1st Cir. 2010); *see also Dávila-Reyes*, 84 F.4th at 416-17.

[35] *United States v. Nunez*, 1 F.4th 976, 984 (11th Cir. 2021) (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132-33 (2012)). *But cf. United States v. Prado*, 933 F.3d 121, 131-32 (2d Cir. 2019) (rejecting argument that vessel lacked nationality where defendants failed to make claim of nationality and officers never asked because statute "makes clear that it is only if the master or person in charge fails '*on request* of an officer of the United States' to make a claim that the failure establishes statelessness").

[36] *See* 46 U.S.C. § 70502(d)(1)(C) ("In this chapter, the term 'vessel without nationality' includes . . . a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.").

No. 22-40393

## C

Posligua's primary argument against subject matter jurisdiction emphasizes the district court's failure to determine that it had jurisdiction *before* accepting Posligua's plea. Essentially, Posligua argues that the district court lacked judicial power until it expressly determined its jurisdiction, meaning the court could not accept his plea and enter judgment. Posligua suggests that a post hoc express confirmation that jurisdiction existed at the case's outset is insufficient to sustain his conviction. We are unpersuaded.

To be sure, the MDLEA makes clear that "[j]urisdictional issues . . . are *preliminary* questions of law to be determined solely by the trial judge,"[37] and we have stated that this "preliminary determination . . . is a *prerequisite* to the court's jurisdiction."[38] Of course, "[w]ithout jurisdiction the court cannot proceed at all."[39] But read in context, these statements do not support the contention that a district court lacks subject matter jurisdiction over an MDLEA charge unless and until it expressly declares otherwise. Congress added the "preliminary questions of law" language in 1996 to make clear that jurisdictional issues are "not issues of fact to be decided by the jury."[40] This preliminary determination is not a prerequisite to the court's jurisdiction in the sense that the district court must complete some formalistic procedure before it is imbued with judicial power. Rather, it is a prerequisite in the sense that the vessel predicating an MDLEA charge

---

[37] *Id.* § 70504(a) (emphasis added).

[38] *United States v. Bustos-Useche*, 273 F.3d 622, 626 (5th Cir. 2001) (emphasis added).

[39] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

[40] *United States v. Prado*, 933 F.3d 121, 139 (2d Cir. 2019) (quoting H.R. Rep. No. 104-854, at 142 (1996) (Conf. Rep.)); *see also Bustos-Useche*, 273 F.3d at 626.

must have been subject to the jurisdiction of the United States for the district court to have subject matter jurisdiction over the charge. Whether the vessel was subject to the jurisdiction of the United States is not dependent on the timing of the district court's determination.

Practically, a district court should and usually will "mak[e] the required jurisdictional determination" before taking certain actions,[41] typically at the Government's request.[42] Doing so enhances judicial efficiency by eliminating the need for us to order a limited remand "permit[ting] the district court to determine, in the first instance, whether it has jurisdiction."[43] But any procedural requirement that a district court determine its jurisdiction in the first instance before taking certain actions does not preclude its judicial power until it has made its determination. Even granting that the district court procedurally erred by accepting Posligua's plea without having determined its jurisdiction, that does not mean the "prerequisite to the court's jurisdiction"—that the vessel was subject to the jurisdiction of the United States—was not satisfied. Here, it was satisfied because the vessel predicating Posligua's MDLEA charge was a vessel without nationality and thus subject to the jurisdiction of the United States. The district court's actions were not void ab initio.

To the extent the MDLEA and our cases impose a procedural requirement on the district court to make its jurisdictional determination before taking certain actions, the district court's failure to do so here was

_____

[41] *United States v. Posligua*, No. 22-40393, 2023 WL 4044438, at *2 (5th Cir. June 15, 2023) (per curiam).

[42] *See, e.g.*, *United States v. Nunez*, 1 F.4th 976, 982 (11th Cir. 2021) ("Before trial, the government moved for a ruling that the United States had jurisdiction over the smugglers' boat as a stateless vessel under the Maritime Drug Law Enforcement Act.").

[43] *Posligua*, 2023 WL 4044438, at *2.

harmless error because it did "not affect [Posligua's] substantial rights."[44] Nothing prevented Posligua from raising, on his own motion, any potential challenges to the court's subject matter jurisdiction at an earlier time, and we see no basis for concluding that the outcome would have been any different if the district court had confirmed its jurisdiction *before* accepting Posligua's plea and entering its judgment.

## III

Posligua also argues that his guilty plea was not knowing and voluntary. Rule 11 "ensure[s] that a guilty plea is knowing and voluntary, by laying out the steps a trial judge must take before accepting such a plea."[45] Two steps are relevant to Posligua's claim. Under Rule 11(b)(1)(G), the district court must, before accepting a guilty plea, "have a colloquy with the defendant that would lead a reasonable person to believe that the defendant understood the nature of the charge."[46] Additionally, under Rule 11(b)(3), "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."[47] Posligua argues both that "the magistrate court failed to make sure Posligua understood the nature of the offense to which he was pleading," and that "the factual basis does not support Posligua's conviction."

---

[44] FED. R. CRIM. P. 52(a); *see also Nunez*, 1 F.4th at 989 ("To be sure, the district court was obliged to determine whether it had jurisdiction before the trial started," but "[t]he smugglers suffered no prejudice from the delay of that ruling.").

[45] *United States v. Vonn*, 535 U.S. 55, 58 (2002).

[46] *United States v. Reyna*, 130 F.3d 104, 110 (5th Cir. 1997); *see also* FED. R. CRIM. P. 11(b)(1)(G).

[47] FED. R. CRIM. P. 11(b)(3).

No. 22-40393

Because Posligua did not object in the district court, the parties agree our review is for plain error. Accordingly,

> to prevail on [his Rule 11] claim, [Posligua] must show that (1) the district court erred in accepting his guilty plea . . ., (2) the error was plain, (3) there is a reasonable probability that but for the error, he would not have pleaded guilty, and (4) the error seriously affected the fairness, integrity, or public reputation of the proceedings.[48]

"Even if the first three prongs of plain-error review are satisfied, . . . [u]nder the fourth prong, 'the court of appeals has the *discretion* to remedy the error.'"[49] "Plain error is error so clear or obvious that 'the trial judge and prosecutor were derelict in countenancing it, even absent the defendant[']s timely assistance in detecting it.'"[50] Thus, "[m]eeting all four prongs is difficult, 'as it should be.'"[51]

Posligua has not shown error—plain or otherwise—under either Rule 11(b)(1)(G) or Rule 11(b)(3). "Neither Rule 11 nor the case law specifies the minimum that the district court must do to inform the defendant . . . of the nature of the charge."[52] The nature of the charge "refers to the elements of

---

[48] *United States v. Alvarado-Casas*, 715 F.3d 945, 951 (5th Cir. 2013).

[49] *United States v. Rivera*, 784 F.3d 1012, 1018 (5th Cir. 2015) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

[50] *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010) (quoting *United States v. Hope*, 545 F.3d 293, 295-96 (5th Cir. 2008)).

[51] *Puckett*, 556 U.S. at 135 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

[52] *United States v. Reyes*, 300 F.3d 555, 559 (5th Cir. 2002) (alteration in original) (quoting *United States v. Reyna*, 130 F.3d 104, 110 (5th Cir. 1997)).

the offense."[53]   When determining whether there is a factual basis for the plea, "the district court compare[s] (1) the conduct to which the defendant admits with (2) the elements of the offense charged in the indictment."[54]

At his plea hearing before the magistrate judge, Posligua affirmed that he understood the nature of the charge alleged against him.  The Government read the individual elements of the offense to which Posligua was pleading guilty.  He responded yes when the magistrate judge asked if he "admit[ted] each one of those elements."  Posligua confirmed that no one "tried to force [him] or threaten[ed] [him] to plead guilty.  The Government read the factual basis Posligua had signed, and Posligua affirmed that everything in his factual basis was true and correct.  He listened to the judge repeat that the charge against him was "conspiracy to possess with the intent to distribute a controlled substance onboard a vessel subject to the jurisdiction of the United States" immediately before the judge asked how he pled.  He pleaded guilty without expressing any confusion regarding the reference to the vessel.  That this was his second MDLEA conspiracy conviction only reinforces the likelihood that he understood the nature of the charge.  The district court accordingly found that "[his] plea [was] knowing and voluntary, and there [was] a factual basis to support [his] plea."

---

[53] *United States v. Jones*, 969 F.3d 192, 198 (5th Cir. 2020) (quoting *Reyes*, 300 F.3d at 559).

[54] *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001).

This colloquy "would lead a reasonable person to believe that the defendant understood the nature of the charge,"[55] and the district court properly "determine[d] that there [was] a factual basis for the plea."[56]

Posligua's argument to the contrary asserts that "nothing in the record establishes that Posligua understood what the Government would have to prove to establish that Posligua was on a 'vessel subject to the jurisdiction of the United States.'" In support, he cites a Second Circuit case that found an MDLEA guilty plea deficient because "the court made no reference either to the requirement that the vessel have been subject to the jurisdiction of the United States or to the crucial issue of its statelessness," and the defendants did not say "anything about the boat's nationality or of its being subject to the jurisdiction of the United States."[57] However, in the Fifth Circuit, we require a colloquy "that would lead a reasonable person to believe that the defendant understood the nature of the charge,"[58] i.e. the "elements of the offense,"[59] and, as Posligua concedes, "[j]urisdiction of the United States with respect to a vessel . . . is not an element of an offense."[60] Moreover, unlike in the Second Circuit case, the court here *did* make reference to the requirement that the vessel be subject to the jurisdiction of the United States—immediately before Posligua entered his guilty plea.

---

[55] *United States v. Reyna*, 130 F.3d 104, 110 (5th Cir. 1997); *see also* FED. R. CRIM. P. 11(b)(1)(G).

[56] FED. R. CRIM. P. 11(b)(3).

[57] *United States v. Prado*, 933 F.3d 121, 152-53 (2d Cir. 2019).

[58] *Reyna*, 130 F.3d at 110; *see also* FED. R. CRIM. P. 11(b)(1)(G).

[59] *United States v. Jones*, 969 F.3d 192, 198 (5th Cir. 2020) (quoting *United States v. Reyes*, 300 F.3d 555, 559 (5th Cir. 2002)).

[60] 46 U.S.C. § 70504(a).

Posligua has also failed to establish either of the remaining plain-error prongs. He has not shown that there is a reasonable probability that but for the alleged error, he would not have pleaded guilty. "Posligua argues that he would never have entered a guilty plea to the charged offense if he had known that the purported conduct upon which his plea rested failed to establish that he had violated the MDLEA." However, as the United States points out, it is highly unlikely Posligua would have risked going to trial and losing the benefits of his plea bargain in the face of strong evidence as to both his guilt and the vessel being without nationality. Although Posligua conclusively asserts "that the district court's failure to make sure he understood what he was pleading to affected the fairness, integrity, and public reputation of the proceedings," he does not explain how the fourth prong applies to the facts of his case beyond a citation to a Ninth Circuit case. We have "refused to correct plain errors when, as here, the complaining party makes no showing k as to the fourth prong."[61] Accordingly, even if Posligua had shown plain error, we would decline to exercise our remedial discretion.

\* \* \*

For the foregoing reasons, Posligua's conviction is AFFIRMED.

---

[61] *United States v. Rivera*, 784 F.3d 1012, 1018 n.3 (5th Cir. 2015).